OPINION
{¶ 1} Defendant-appellant, Jose B. Pena, was indicted by a Franklin County Grand Jury on four counts, including: (1) trafficking in cocaine with a major drug offender specification, in that at least one kilogram of cocaine was prepared for shipment, in violation of R.C. 2925.03 and 2941.1410; (2) possession of the same cocaine in an amount equal to or exceeding one kilogram, and a corresponding major drug offender specification based on possession of at least 1,000 grams of cocaine, in violation of R.C. 2925.11 and 2941.1410; and (3) two counts of complicity based on the same alleged activity, which were later dismissed by the prosecution.
 {¶ 2} Appellant filed a motion to suppress evidence and, after a hearing, the trial court overruled the motion. After a jury trial, he was found guilty of Count 1, trafficking in cocaine that was equal to or exceeding 1,000 grams, and Count 2, possession of cocaine with the amount being equal to or exceeding 1,000 grams. Appellant was sentenced to ten years on Count 1 and ten years on Count 2 with an additional ten years under the major drug offender specification. Counts 1 and 2 are to run concurrent with each other and the ten years for the major drug offender specification is to run consecutive with Counts 1 and 2. Appellant filed a notice of appeal and raises the following assignments of error:
I. The trial court erred in overruling appellant's motion to suppress evidence in violation of the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution.
II. The trial court failed to adequately explain its findings in sentencing appellant to maximum and consecutive prison terms.
III. The trial court committed plain error by entering judgments of conviction and sentencing appellant to consecutive prison terms for allied offenses of similar import, in violation of R.C. 2941.25 and the Double Jeopardy Clauses of the United States and Ohio Constitutions.
IV. The trial court erred and deprived appellant of due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution and comparable provisions of the Ohio Constitution by overruling appellant's motion for acquittal pursuant to Crim.R. 29, as the state failed to offer sufficient evidence to prove each and every element of the charged offenses beyond a reasonable doubt. Appellant's convictions were against the manifest weight of the evidence and thereby violated the due process clause of the Fourteenth Amendment of the United States Constitution and comparable provisions of the Ohio Constitution.
 {¶ 3} After his brief to this court was filed, appellant retained new counsel who filed a supplemental brief and raises the following assignments of error:
Supplement to Fourth Assignment of Error
The evidence was insufficient and the convictions were against the manifest weight of the evidence because the evidence of "possession" was unconvincing.
Fifth Assignment of Error
The trial court's misinstruction about appellant not testifying denied him the constitutional right to a fair trial.
Sixth Assignment of Error
To the extent that this court finds the error concerning the incorrect jury instruction waived due to counsel's failure to object, then appellant contends that defense counsel was ineffective for failing to lodge an objection to the instruction.
 {¶ 4} By the first assignment of error, appellant contends that the trial court erred in overruling his motion to suppress evidence in violation of the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution. Appellant's argument is directed to both the warrantless search of the rental car and the truck, as well as the search, pursuant to a warrant, of his property recovered following his arrest.
 {¶ 5} Detective Michael Johnson testified at the suppression hearing that, in the afternoon of May 19, 2002, he received a tip from a confidential informant that appellant, a substantial cocaine trafficker, was receiving a big drug shipment that evening. The informant stated appellant was working with one or more Mexicans and coordinating a shipment of cocaine from Arizona. Another confidential informant told Johnson that he had purchased cocaine from appellant in the previous month. Johnson watched appellant all afternoon. At approximately midnight, appellant left his house in a silver Nissan Maxima, a rental car which had been rented by his girlfriend. Johnson lost sight of appellant, so he drove to the Interstate 270 and Roberts Road area where he believed the drug transaction was to take place. Johnson saw the Maxima in front of the Waffle House. A white semi trailer with Arizona license plates was parked behind the Waffle House and a man, later identified as Christopher Luty, was pacing nervously in front of the truck. Appellant and Rigoberto Guzman were inside the Waffle House and another police officer saw appellant on a cell phone. Appellant and Guzman got back into the Maxima and drove behind the Waffle House. By the time Johnson arrived behind the building, he saw the Maxima parked near the truck, Luty had a large suitcase and Guzman was just closing the trunk of the Maxima. Johnson believed a drug transaction had just taken place and followed the Maxima as it drove away. Johnson stopped the Maxima, which Guzman was driving. Appellant had exited the vehicle and fled on foot and was found approximately one hour later. When the police officers stopped Guzman, he was removed from the car, placed on the ground and handcuffed. Nothing was found inside the trunk of the car. Johnson then ran back approximately 100 yards to the truck, knocked on the door and removed Luty from the truck. When Johnson looked inside the sleeper cab of the truck, there were 23 kilos of cocaine on the sleeper bunk. Johnson also observed a screwdriver and screws on the seat. After the truck was impounded, it was ascertained that another 9 kilos of cocaine were hidden in the ceiling. Johnson testified that it was approximately one or one and one-half minutes between the time Guzman was stopped and the time Johnson saw the cocaine in the truck. The suitcase found in the truck had a name tag containing the name of appellant's girlfriend.
 {¶ 6} The police recovered miscellaneous papers from the Maxima, including the rental car agreement and hotel receipts. On August 30, 2002, Johnson obtained a search warrant for Guzman's personal property recovered from him when he was arrested and being held at the jail. Appellant argued that the cocaine, miscellaneous papers, including the rental car agreement and hotel receipts, and the information received from Guzman's cell phone should have been excluded.
 {¶ 7} Upon appellate review of a motion to suppress, while this court is "bound to accept the trial court's findings of fact which are supported by competent, credible evidence, we must independently determine as a matter of law, without deference to the trial court's conclusions, whether the findings of fact satisfy the appropriate legal standard." State v. Goins (Oct. 22, 1998), Franklin App. No. 98AP-266. In State v. DePew
(1988), 38 Ohio St.3d 275, 277, certiorari denied (1989),490 U.S. 1032, the Supreme Court of Ohio determined that "[i]n reviewing a ruling on a motion to suppress, an appellate court must bear in mind that the weight of the evidence and the credibility of witnesses are for the trier of fact."
 {¶ 8} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures unless an exception applies. An investigative stop is a common exception to theFourth Amendment warrant requirement. In Terry v. Ohio (1968),392 U.S. 1, the United States Supreme Court held that a police officer may stop an individual if the officer has a reasonable suspicion, based upon specific and articulable facts, that criminal behavior has occurred or is imminent. In Delaware v.Prouse (1979), 440 U.S. 648, 653, the court held that an officer may stop an automobile under the Terry stop exception if the officer possesses the requisite reasonable suspicion based upon specific and articulable facts. See, also, State v. Gedeon
(1992), 81 Ohio App.3d 617, 618. The propriety of an investigative stop must be viewed in light of the totality of the circumstances. State v. Freeman (1980), 64 Ohio St.2d 291, certiorari denied (1981), 454 U.S. 822, paragraph one of the syllabus. In Whren v. United States (1996), 517 U.S. 806, the court stated that an automobile stop based upon a traffic violation, even a minor one, is "reasonable" under theFourth Amendment.
 {¶ 9} As to the search of the car and truck, the trial court properly determined that the police had probable cause to believe there was contraband both inside the truck and the car. There was a reasonable suspicion, based upon specific and articulable facts, that criminal behavior had occurred. The police had information that a drug transaction was to take place near Roberts Road and Interstate 270, and the drugs were arriving from Arizona. When they arrived at the location, they observed a truck with Arizona plates. Detective Johnson saw Luty with a suitcase and Guzman closing the trunk of the Maxima. Given these facts, the officers had a reasonable suspicion to believe that criminal behavior, a drug transaction, had occurred and to stop the vehicles. The police officers did not need a warrant to search the truck for easily accessible weapons or other persons who could pose a threat to the officers' safety. State v. Smith
(1978), 56 Ohio St.2d 405. If the officers have probable cause, as in this case, to believe that a vehicle contains contraband, the Fourth Amendment does not require them to obtain a warrant prior to searching the vehicle. Florida v. White (1999),526 U.S. 559, 563-565.
 {¶ 10} As to appellant's personal property recovered following his arrest, this court has already determined that a search of property seized from an individual upon arrest and being held in police custody is a lawful search. See State v.Tucker, Franklin App. No. 00AP-670, 2002-Ohio-3274. As stated inTucker, the Fourth Amendment to the United States Constitution protects persons from unreasonable searches and seizures; however, it protects only reasonable expectations of privacy.Rakas v. Illinois (1978), 439 U.S. 128. An individual whose property is taken during his arrest does not retain a reasonable expectation of privacy while the property is in police custody. Once property has been exposed to police view under lawful circumstances, no reasonable expectation of privacy is breached by the police taking a second, more detailed but no more intrusive look at the same property. Tucker. Although the police did not need a warrant to search appellant's personal property, in this case, a warrant was obtained and appellant failed to demonstrate any deficiencies to that warrant. The trial court did not err in overruling appellant's motion to suppress and appellant's first assignment of error is not well taken.
 {¶ 11} By the second assignment of error, appellant contends that the trial court failed to adequately explain its findings in sentencing appellant to maximum and consecutive prison terms. In oral argument, the state conceded that the trial court did not make the required statutory findings and this cause should be remanded for resentencing. Appellant's second assignment of error is well taken.
 {¶ 12} By the third assignment of error, appellant contends that the trial court committed plain error by entering judgments of conviction and sentencing appellant to consecutive prison terms for allied offenses of similar import, in violation of R.C.2941.25 and the Double Jeopardy Clauses of the United States and Ohio Constitutions.
 {¶ 13} Appellant argues that the trial court erred in imposing consecutive sentences and failed to provide its reasons for doing so as required by R.C. 2929.19(B)(2); however, the trial court imposed concurrent sentences on Counts 1 and 2, and, thus, was not required to make findings pursuant to R.C.2929.19(B)(2).
 {¶ 14} Appellant also states, but makes no argument, that the trial court erred by sentencing appellant for allied offenses of similar import. In State v. Johnson (2000),140 Ohio App.3d 385, 390, the court determined that trafficking in cocaine and possession of cocaine are not allied offenses of similar import. Thus, appellant's third assignment of error is not well taken.
 {¶ 15} By the fourth assignment of error, appellant contends that the trial court erred and deprived appellant of due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution and comparable provisions of the Ohio Constitution by overruling appellant's motion for acquittal, pursuant to Crim.R. 29, as the state failed to offer sufficient evidence to prove each and every element of the charged offenses beyond a reasonable doubt. Thus, appellant argues his convictions were against the manifest weight of the evidence and thereby violated the Due Process Clause of the Fourteenth Amendment of the United States Constitution and comparable provisions of the Ohio Constitution. Crim.R. 29(A) provides, as follows:
The court * * * shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. * * *
When reviewing the trial court's denial of a motion for acquittal under Crim.R. 29, a reviewing court applies the same test as it would in reviewing a challenge based upon the sufficiency of the evidence to support a conviction. State v.Thompson (1998), 127 Ohio App.3d 511, 525. The standard of review for sufficiency of the evidence is if, while viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law."State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
 {¶ 16} In this case, several police officers testified. The police received information in the afternoon of May 19, 2002, that appellant was receiving a large shipment of cocaine from Arizona that evening. The police set up surveillance of appellant's residence and saw him driving a silver Nissan Maxima. Close to midnight, the officers observed appellant leaving his residence. They lost view of him so they traveled to the area of Interstate 270 and Roberts Road where they believed the transaction was to occur. Detective Johnson testified that he drove around the area and saw a white semi tractor trailer with Arizona license plates behind the Waffle House and a male, later identified as Christopher Luty, pacing nervously in front of it. Then the Maxima arrived and appellant and another man, later identified as Rigoberto Guzman, went inside the Waffle House. Two officers inside the Waffle House testified that appellant and Guzman appeared nervous. Appellant was using a cell phone and kept saying "okay." (Tr. Vol. III, at 91.) When he hung up the phone, he said to Guzman, "they called." (Tr. Vol. III, at 91.) The two immediately went outside. Detective Johnson testified that Guzman and appellant drove behind the building and stopped next to the semi. Johnson saw appellant and Luty next to the truck and Luty turned and put a suitcase inside the truck while Guzman was closing the trunk of the Maxima. Then Guzman and appellant drove away. Johnson stopped the Maxima before it left the area but only Guzman was inside because appellant had fled the area on foot. After detaining Guzman, Johnson opened the trunk of the Maxima, expecting drugs inside, but the trunk was empty. At that point, Johnson realized the cocaine was still inside the truck so he ran back to the truck. After knocking on the truck door, Luty was pulled from the truck and Johnson did a protective sweep of the truck. Inside the sleeper cab were 23 kilos of cocaine and an additional 9 kilos were found hidden in the ceiling. Appellant was apprehended approximately one hour later found hiding in a creek bed.
 {¶ 17} Luty testified that he drove the truck from Arizona. He was first called on his cell phone by a woman but he could not understand her accent. Then a male called and gave him directions to complete the transaction at the Waffle House. He was met by appellant and Guzman, and Luty recognized appellant's voice as the one who telephoned him. Luty testified that appellant put the suitcase in the truck and was coming back in about 20 minutes after Luty loaded the suitcase. As he was doing so, the police knocked on the truck door, saw the cocaine and he was arrested. He spent a week in the same jail cell with appellant, and appellant told him his girlfriend had been the one who originally called Luty. Papers found inside the Maxima indicated the Maxima was rented by Fatima Brea, who Luty testified was appellant's girlfriend. The name tag on the suitcase indicated it also belonged to appellant's girlfriend.
 {¶ 18} Given all of this evidence, and viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. While much of the evidence is circumstantial, in Jenks, the Supreme Court of Ohio determined that circumstantial and direct evidence inherently possess the same probative value and should be subjected to the same standard of proof. See Jenks, at paragraph one of the syllabus. A defendant may be convicted solely on the basis of circumstantial evidence. State v. Nicely (1988), 39 Ohio St.3d 147.
 {¶ 19} Appellant also argues that the Crim.R. 29 motion should have been granted because the conviction is against the manifest weight of the evidence. The test for whether a judgment is against the manifest weight of the evidence involves a limited weighing of the evidence by the court to determine whether there is sufficient, competent, credible evidence which could convince a reasonable trier of fact of appellant's guilt beyond a reasonable doubt. State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387. In Thompkins, supra, at 387, the Supreme Court of Ohio described the standard of review, as follows:
* * * Weight of the evidence concerns "the inclination of thegreater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on the weighing the evidence in their minds, they shall find the greater amount ofcredible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.) Black's [Law Dictionary (6 Ed. 1990)], at 1594.
 {¶ 20} In this case, the testimony provided sufficient, competent, credible evidence which could convince a reasonable trier of fact of appellant's guilt beyond a reasonable doubt. Appellant's fourth assignment of error is not well-taken.
 {¶ 21} By the supplement to the fourth assignment of error, appellant contends that the evidence was insufficient and the convictions were against the manifest weight of the evidence because the evidence of "possession" was unconvincing. "Possess" or "possession" is defined in R.C. 2925.01(K) as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." However, constructive possession is sufficient where the evidence demonstrates that appellant was able to exercise dominion or control over the items, even though the objects may not be within his immediate physical possession. State v.Wolery (1976), 46 Ohio St.2d 316, 329. While mere presence in the vicinity of illicit drugs is not sufficient to prove possession, close proximity to readily, usable drugs has been found sufficient for constructive possession. See State v.Pruitt (1984), 18 Ohio App.3d 50, 58.
 {¶ 22} In this case, there was sufficient evidence that appellant was guilty of complicity to possess the cocaine. R.C.2923.03(A)(2) provides that: "No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following: * * * (2) Aid or abet another in committing an offense[.]" Generally, a criminal defendant has aided or abetted an offense if he has supported, assisted, encouraged, cooperated with, advised, or incited another person to commit the offense. See State v. Johnson (2001), 93 Ohio St.3d 240, syllabus. "`Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.' "State v. Mendoza (2000), 137 Ohio App.3d 336,342, quoting State v. Stepp (1997), 117 Ohio App.3d 561,568-569.
 {¶ 23} Luty possessed the cocaine in this case but he testified that appellant told him where to meet in order to give the cocaine to appellant. Johnson reasonably believed appellant gave Luty the suitcase in order to pack the cocaine and Luty testified that he was getting the cocaine out of its hiding place to give to appellant. He also testified that he was instructed to give all 32 kilos of cocaine to appellant. The name on the suitcase name tag was that of appellant's girlfriend. There was sufficient evidence that appellant aided and abetted Luty in committing the offense of possession of cocaine. Appellant's supplement to his fourth assignment of error is not well-taken.
 {¶ 24} The fifth and sixth assignments of error are related. By the fifth assignment of error, appellant contends that the trial court's instruction about appellant not testifying denied him the constitutional right to a fair trial. By the sixth assignment of error, appellant contends that to the extent that this court finds the error concerning the incorrect jury instruction waived due to counsel's failure to object, then appellant contends that defense counsel was ineffective for failing to lodge an objection to the instruction. Appellant did not request an instruction on the right to remain silent and did not object to the instruction given by the trial court. Generally, failing to object at trial or to request specific instructions waives all but plain error. Crim.R. 30(A). Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Notice of plain error is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v.Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 25} Appellant argues that the following instruction was insufficient:
In addition, you are certainly aware that the defendant did not testify in this case. Now, the decision of whether to testify or not to testify in a criminal matter is totally left up to the defendant after he has had his consultation with his attorney. There are many reasons why an individual may or may not testify in any particular matter and you should not be concerned with those reasons. By not testifying, the defendant is exercising his rights that are guaranteed to him under the constitutions of the United States and the State of Ohio.
(Tr. Vol. III, at 230.)
 {¶ 26} Appellant contends that, since the trial court did not specifically instruct the jury that it could not consider the fact that appellant did not testify for any purpose, the court thereby failed to instruct the jury that appellant's silence was not to be considered as evidence that appellant was guilty. InState v. Fanning (1982), 1 Ohio St.3d 19, the court determined that a defendant has a right, if properly requested, to have the trial court instruct the jury that his failure to testify cannot be considered for any purpose; however, the court also found that the defendant in Fanning did not properly request the instruction in writing and affirmed his conviction despite the fact that the trial court had not given the instruction.
 {¶ 27} Here, the trial court did instruct the jury that appellant had a constitutional right not to testify and advised the jury that there are many reasons why a person may choose not to testify and they should not be concerned with those reasons. Also, the trial court instructed the jury that appellant was presumed innocent until his guilt is established beyond a reasonable doubt and the presumption of innocence alone is sufficient to acquit appellant. When determining whether a trial court erred in its jury instructions, an appellate court reviews the instruction as a whole. Wozniak v. Wozniak (1993),90 Ohio App.3d 400, 410. Given these other instructions, we cannot say that appellant was prejudiced by the lack of instruction. The jury is presumed to follow instructions given by the court. Pangv. Minch (1990), 53 Ohio St.3d 186, paragraph four of the syllabus. Since appellant did not request the instruction, he waived any alleged error unless it amounted to plain error. In this case, given the evidence of appellant's guilt, the lack of instruction does not amount to plain error.
 {¶ 28} Appellant also contends that defense counsel was ineffective for failing to lodge an objection to the instruction. In State v. Braxton (June 6, 1985), Franklin App. No. 84AP-924, this court held that, where the failure to object does not constitute plain error, the issue cannot be reversed by claiming ineffective counsel. As such, appellant's fifth and sixth assignments of error are not well-taken.
 {¶ 29} For the foregoing reasons, appellant's first, third, fourth, supplement to fourth, fifth and sixth assignments of error are overruled, the second assignment of error is sustained, and the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part and this cause is remanded to that court for resentencing.
Judgment affirmed in part, reversed in part and remanded for resentencing.
Petree and Sadler, jj., concur.