OPINION
{¶ 1} Defendant-appellant, Edward Hodge, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas for two counts of aggravated murder with firearm and death penalty specifications and two counts of kidnapping with firearm specifications. For the following reasons, we affirm that judgment.
 {¶ 2} Ricky Palmer and Denise Evans lived together with their two children at 2482 Dawnlight Avenue in Columbus, Ohio. Palmer had been selling marijuana out of his house for the past five or ten years and previously sold marijuana to appellant. By the beginning of 2002, appellant owed Palmer a significant amount of money for past drug purchases and appellant was ignoring Palmer's requests for payment. Palmer told friends and family that he was upset over appellant's debt. Due to concerns about safety, Palmer always kept his doors locked and only let people he knew into his house. He also preferred guests to call before coming to his house.
 {¶ 3} On March 12, 2002, appellant called Paul Hodge (the two are not related — hereinafter "Paul"), and told him that he knew a guy who had a lot of money and drugs in his house and that they should rob him. Paul then called Eric Franklin, whom Paul met while the two men were in prison together in 1998. Franklin lived in West Virginia. Paul asked Franklin to take part in the robbery. Franklin drove to Columbus and met with Paul and appellant at appellant's sister's house around 9:00 a.m. on March 13, 2002. During that meeting, appellant told the others about the plan to rob Palmer. Pursuant to the plan, appellant would first call Palmer and tell him that appellant was with two people from New York City who were interested in selling Palmer marijuana. When the three men entered the house, they would duct tape and rob Palmer.
 {¶ 4} Around 10:00 a.m., the three men drove together to a pay phone near Palmer's house where appellant called Palmer. Thereafter, they drove to Palmer's house. Palmer let appellant into the house while Paul and Franklin remained in the car. After a few minutes, Palmer invited Paul and Franklin into the house. Once inside the house, Paul gave Palmer a shoebox full of marijuana. As Palmer looked into the shoebox, Paul and Franklin pulled out guns and ordered Palmer to lay face down on the floor. Palmer complied with their request and had his eyes and hands duct taped. Shortly thereafter, appellant brought Evans into the kitchen, laid her on the ground next to Palmer and duct taped her hands and eyes. While appellant and Franklin went through the house looking for money, drugs, and other valuable property, Paul stayed with Palmer and Evans in the kitchen. Palmer told Paul that there was no money in the house. Hearing that, Paul went outside and sat in the car. After a few trips carrying various items from the house to the car, Franklin joined Paul in the car. Appellant was still in the house. While waiting in the car for appellant, Paul thought he heard multiple thumping sounds. A few minutes later, appellant came out of the house and the three men drove to appellant's apartment and then parted ways. Later that day, Palmer and Evans' children returned home from school and found their parents in the kitchen, dead from multiple gunshot wounds to the head and back.
 {¶ 5} As a result, on March 28, 2003, appellant was charged with two counts of aggravated murder in violation of R.C. 2903.01
and two counts of kidnapping in violation of R.C. 2905.01. Both aggravated murder charges contained death penalty specifications pursuant to R.C. 2929.04(A) and all of the charges contained a firearm specification pursuant to R.C. 2941.145. Appellant entered not guilty pleas to the charges and proceeded to a jury trial. The jury found appellant guilty of all charges and the accompanying death penalty and firearm specifications. Accordingly, a mitigation hearing was held for the jury to consider the imposition of the death penalty. The jury was unable to determine beyond a reasonable doubt whether the aggravating circumstances outweighed the mitigating circumstances and, therefore, imposed a life sentence without parole eligibility for the two aggravated murder convictions. The trial court sentenced appellant to a total prison term of life plus 13 years.
 {¶ 6} Appellant appeals, assigning the following errors:
Assignment of Error One
Prejudicial error occurs in an aggravated murder trial when the judge gives a jury instruction that contains two separate offense in one count, contra the fifth, sixth and fourteenth amendments to the constitution.
Assignment of Error Two
Plain error occurs when the spouse testifies against the accused contra evid.r. 601(b) and the fifth, sixth and fourteenth amendments to the constitution.
Assignment of Error Three
Prejudicial error occurs when the trial judge gives an improper jury instruction on a death penalty specification, and questions from the jury during their deliberations show the jury found the accused was the accomplice, contra the fifth, sixth and fourteenth amendments to the constitution.
Assignment of Error Four
The trial court commits prejudicial error in refusing to allow the defense to cross-examine the prosecution's main witness on another similar homicide, contra Evid.ru. 404(b) (sic), and the fifth, sixth and fourteenth amendments to the constitution.
Assignment of Error Five
Prejudicial error occurs when defense counsel are ineffective, contra the sixth and fourteenth amendments to the constitution.
Assignment of Error Six
Where the record demonstrates there was insufficient evidence as a matter of law to support the charge of aggravated murder, the conviction cannot stand.
Assignment of Error Seven
Prejudicial error occurs when the trial court denies a mistrial when it is revealed the prosecutor failed to turn over brady material, contra the fifth, sixth and fourteenth amendments to the constitution.
 {¶ 7} For ease of analysis, we address appellant's assignments of error out of order. In his second assignment of error, appellant contends the trial court committed plain error by allowing two recorded phone conversations between him and Glenda Hodge to be played to the jury. The conversations were recorded when appellant called Glenda Hodge from jail. Appellant contends that Glenda Hodge was not competent to testify against him under Evid.R. 601(B), which provides that a spouse is incompetent to testify until she makes a deliberate choice to testify, with knowledge of her right to refuse. State v.Adamson (1995), 72 Ohio St.3d 431, 434.
 {¶ 8} At trial, appellant's counsel stipulated that Glenda Hodge was appellant's ex-wife at the time these conversations took place and did not object on competency grounds when the state introduced the recorded conversations into evidence. Accordingly, appellant has waived this argument but for plain error. See State v. Williams (1977), 51 Ohio St.2d 112. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus. "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." State v.Moreland (1990), 50 Ohio St.3d 58, 62.
 {¶ 9} Appellant now contends he was married to Glenda Hodge. Without determining whether appellant and Glenda Hodge were in fact married when these conversations took place or whether Glenda Hodge's recorded statements constituted testimony, we conclude that the admission of the two recorded conversations, even if error, does not rise to the level of plain error. The overriding theme of Glenda Hodge's statements during these conversations was that she did not think appellant could have murdered anyone. Glenda Hodge's statements were not harmful to appellant. Accordingly, we cannot say that but for the admission of these recorded statements, the outcome of the trial clearly would have been different. Moreover, appellant's counsel invited any error by stipulating that Glenda Hodge was appellant's ex-wife. State v. Seiber (1990), 56 Ohio St.3d 4, 17 ("A party cannot take advantage of an error he invited or induced.") Appellant's second assignment of error is overruled.
 {¶ 10} Appellant contends in his fourth assignment of error that the trial court abused its discretion by prohibiting defense counsel from fully cross-examining Paul. We disagree. A trial court has the discretion to limit the scope of cross-examination.Berlinger v. Mt. Sinai Medical Ctr. (1990), 68 Ohio App.3d 830,838. Cross-examination shall be permitted on all relevant matters and matters affecting credibility. Evid.R. 611(B). The trial court also retains wide latitude to impose reasonable limits on cross-examination based upon concerns of harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant. Delaware v. VanArsdall (1986), 475 U.S. 673, 679, 106 S.Ct. 1431. As such, an appellate court should be slow to disturb a trial court's ruling on the scope of cross-examination unless the trial court has abused its discretion and the party illustrates a material prejudice. Reinoehl v. Trinity Universal Ins. Co. (1998),130 Ohio App.3d 186, 194. "`The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'"Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 11} Paul was the State's main witness against appellant. Paul testified about the planning of the robbery. He was present at the scene of the murders and identified appellant as the person who was in the house when Paul heard muffled gunshots. At the time of trial, however, Paul was serving a 12-year federal prison term and was also facing a number of other federal and state criminal charges. He had signed plea agreements with federal prosecutors pleading guilty to a federal drug conspiracy charge and with Ohio prosecutors pleading guilty to involuntary manslaughter in connection with the deaths of Palmer and Evans and the unrelated death of Manuel Rueben. In exchange for those guilty pleas and his testimony against appellant in this case and against Franklin in the Rueben case, Paul was to receive 21 years in prison for the involuntary manslaughter convictions and would be recommended for a 20-year concurrent prison term for his federal drug conspiracy charge. Paul would face no other federal criminal charges arising from his testimony.
 {¶ 12} At trial, appellant's counsel sought to cross-examine Paul about the facts underlying the Rueben homicide. Paul and Franklin allegedly robbed and killed Rueben over drug money Paul owed Rueben. Paul allegedly identified Franklin as the shooter in the Rueben case. Appellant's counsel admitted that he had no facts about the Rueben homicide with which he could impeach Paul, but he wanted to show that Paul was involved in a similar murder and had named Franklin as the person who killed Rueben. Appellant's counsel sought to show that someone other than appellant could have killed Palmer and Evans. The state, however, argued that if the underlying facts of the Rueben murder were brought out, they would also show that Paul introduced Rueben to appellant, who, in turn, purchased large amounts of marijuana from Rueben and then sold the marijuana to Palmer. The trial court prohibited counsel from questioning Paul about the facts underlying the Rueben homicide because of the court's concerns that those facts would unfairly prejudice appellant and confuse the jury.
 {¶ 13} The trial court did not completely deny appellant's counsel the opportunity to cross-examine Paul about Paul's involvement in the Rueben homicide. Appellant's counsel was allowed to read the criminal indictment in the Rueben case which charged Paul with aggravated murder with death penalty and firearm specifications. Appellant's counsel also brought out that Franklin was a defendant in that case. Paul was also asked repeatedly about his plea agreements and the effect of those on the amount of jail time he received for his criminal offenses. We conclude that the trial court did not abuse its discretion in limiting the questioning of Paul in this manner. The risk of confusing the jury with facts about the unrelated Rueben homicide was a legitimate concern. More significantly, the facts underlying the Rueben homicide would unfairly prejudice appellant by linking him to another homicide and by connecting him to another drug transaction involving Palmer. Given these valid concerns, the trial court did not abuse its discretion by limiting Paul's cross-examination. Accordingly, appellant's fifth assignment of error is overruled.
 {¶ 14} In his seventh assignment of error, appellant contends the trial court abused its discretion when it denied his motion for a mistrial after it was discovered that the State failed to provide appellant with oral statements made by Paul. We disagree. A trial court has discretion to grant or deny a motion for mistrial. State v. Sage (1987), 31 Ohio St.3d 173, 182. This court must defer to the judgment of the trial court, as it is in the best position to determine whether the circumstances warrant the declaration of a mistrial. State v. Glover (1988),35 Ohio St.3d 18, 19. Accordingly, an appellate court will not disturb a trial court's decision granting or denying a motion for mistrial unless it constitutes an abuse of discretion. State v. Treesh
(2001), 90 Ohio St.3d 460, 480, certiorari denied, 533 U.S. 904,121 S.Ct. 2247. An abuse of discretion means more than an error of law or judgment; it implies an arbitrary, unreasonable, or unconscionable attitude on the part of the trial court.Blakemore, supra.
 {¶ 15} In September of 2002, FBI Agent Kevin Horan interviewed Paul about the Rueben homicide as well as the Palmer and Evans homicides. In that interview and in a second interview a month later, Paul confessed to his involvement in those homicides. Agent Horan was not able to record those interviews but, instead, wrote his own summaries of the interviews. During Paul's cross-examination, appellant's counsel asked him about inconsistencies between his testimony at trial and Agent Horan's summaries of the interviews. Paul acknowledged some inconsistent points, such as who duct taped Palmer and whether he heard gunshots while he was sitting in the car. In Paul's re-direct examination, the State sought to rehabilitate him with oral statements Paul later made to prosecutors while preparing for trial clarifying his previous statements and explaining the inconsistencies between the summaries and his testimony. These oral statements were not recorded or transcribed. Nevertheless, appellant's counsel objected and requested a mistrial, claiming that appellant was entitled to those statements during discovery. The trial court denied appellant's motion and allowed the State to continue with Paul's redirect. Appellant now claims that the State was required to disclose Paul's oral statements to prosecutors. We disagree.
 {¶ 16} The prosecution's failure to disclose evidence favorable to the accused upon request constitutes a violation of the Fourteenth Amendment's due process guarantee of a fair trial "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."Brady v. Maryland (1963), 373 U.S. 83, 87, 83 S.Ct. 1194; see, also, State v. Johnston (1988), 39 Ohio St.3d 48; Crim.R. 16(B)(1)(f). Brady requires the disclosure only of "material" evidence, and evidence is "material" only if there is "a reasonable probability that," had the evidence been disclosed to the defense, "the result of the proceeding would have been different." United States v. Bagley (1985), 473 U.S. 667, 682,105 S.Ct. 3375, 3383. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish `materiality' in the constitutional sense." United States v.Agurs (1976), 427 U.S. 97, 109-110, 96 S.Ct. 2392, 2400.
 {¶ 17} The State did not violate its duty under Brady
because the oral statements Paul made to the prosecutors supported Paul's testimony and were, therefore, detrimental to appellant. The statements did not assist appellant in his alibi defense. See State v. LaMar, 95 Ohio St.3d 181, 2002-Ohio-2128, at ¶ 28. The assertion that appellant's counsel would have taken a different approach to Paul's cross-examination if they had known of Paul's later statements is insufficient to demonstrate a reasonable probability that, had the evidence been disclosed to appellant, the result of the proceeding would have been different. Bagley, supra. In fact, appellant's counsel was still able to impeach Paul by pointing out several inconsistencies between his testimony and the FBI summaries. Accordingly, because the State did not violate Brady when it failed to disclose Paul's oral statements, the trial court did not abuse its discretion in denying appellant's motion for a mistrial. Appellant's seventh assignment of error is overruled.
 {¶ 18} In his first assignment of error, appellant contends the trial court's aggravated murder instructions to the jury were improper because they both contained distinct, alternative forms of the offense. Specifically, the jury was instructed that appellant could be found guilty of aggravated murder if he "purposely, with prior calculation and design, caused the death" of Palmer or Evans "and/or purposely caused the death of [Palmer or Evans] while the defendant was committing, or attempting to commit, or while fleeing immediately after committing or attempting to commit aggravated robbery and/or kidnapping." Appellant now claims that because the jury instructions contain alternative forms of aggravated murder, it is impossible to determine whether the jury unanimously convicted him of either of the alternatives.
 {¶ 19} Appellant did not object to the jury instructions, nor did he object to the indictment which charged him with aggravated murder in identical, alternative language. Accordingly, he has waived all but plain error. State v. Slagle (1992),65 Ohio St.3d 597, 608; State v. Pena, Franklin App. No. 03AP-174, 2004-Ohio-350, at ¶ 24. Again, plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise. Moreland, supra, at 62.
 {¶ 20} The trial court's instructions merged alternative forms of aggravated murder into one charge. Appellant contends that given the alternative form of the instructions, there is no way to determine whether the jury unanimously convicted appellant of either of the alternatives. We disagree. A jury must unanimously agree that a defendant is guilty of a particular criminal offense before returning a guilty verdict on that offense. State v. Thomas (1988), 40 Ohio St.3d 213, paragraph three of the syllabus. Although the trial court's instruction provided the jury with alternative forms of aggravated murder, it was not so confusing that a jury could not understand the instruction.
 {¶ 21} More importantly, the trial court specifically instructed the jury that "[b]efore you can find the defendant guilty on an offense providing alternatives, you must be unanimous in your verdict as to any one alternative." Jurors are generally presumed to follow the trial court's instructions.State v. Herring (2002), 94 Ohio St.3d 246, 254. Given the trial court's instruction that the jury be unanimous as to any alternative way of committing an offense, we cannot say that the jury was less than unanimous when it convicted appellant of aggravated murder. See State v. Clay (Mar. 28, 2000), Franklin App. No. 99AP-404 (finding no error in jury instructions which included alternative ways of committing offense when trial court instructed jury that it had to be unanimous in the verdict as to any one alternative). Accordingly, having found no error, let alone any plain error, appellant's first assignment of error is overruled.
 {¶ 22} Appellant contends in his third assignment of error that the trial court's instructions during the guilt phase of the trial regarding one of the death penalty specifications were improper. Specifically, the trial court instructed the jury that before it could find appellant guilty of the felony-murder death penalty specification in R.C. 2929.04(A)(7), it must find beyond a reasonable doubt that appellant "purposely caused the death of [Palmer or Evans] while committing or attempting to commit or fleeing immediately after committing or attempting to commit aggravated robbery and/or kidnapping, and the defendant personally committed each act which constituted the aggravated murder, including firing the shot that caused the death of [Palmer or Evans], and/or committed aggravated murder with prior calculation and design." Appellant's counsel did not object to this instruction or the indictment which charged him with the death penalty specification and, therefore, has waived all but plain error. Again, plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise. Moreland, supra, at 62. Even though appellant's counsel seemed to concede at oral argument that this assignment of error would only be relevant if we reversed appellant's convictions and remanded the matter for a new trial, we nevertheless will address it.
 {¶ 23} In State v. Penix (1987), 32 Ohio St.3d 369, Penix was convicted of aggravated murder with accompanying death penalty specifications. During the penalty phase, the trial court instructed the jury to weigh the factors in mitigation against the aggravating circumstances found in the felony-murder specification. However, that court instructed the jury that the two aggravating circumstances were: (1) that the defendant acted with prior calculation and design, and (2) that the defendant was the principal offender and committed the offense while committing or attempting to commit aggravated robbery. The Supreme Court of Ohio noted that the language of the felony-murder specification was in the alternative and could not be charged and proven in the same case, because the prior calculation and design portion of the specification was only applicable if the defendant was not the principle offender. Thus, because the jury in the guilt phase determined that the defendant personally committed the acts, the prior calculation and design portion of the specification should not have been considered by the jury in the penalty phase. Id. at 371. Because the presentation of an aggravating circumstance not permitted by statute impermissibly tipped the scale in favor of death and undermined the reliability of the jury's decision to impose the death penalty, the Supreme Court reversed the imposition of the death penalty and remanded the matter for resentencing.
 {¶ 24} Appellant contends that the trial court's instruction was similarly improper because it presented to the jury both alternatives for the felony-murder specification as in Penix.
We disagree. In Penix, the improper instruction was given during the penalty phase of the trial which tipped the scale in favor of the death penalty. In the present matter, however, appellant objects to an instruction given in the guilt phase of appellant's trial. Therefore, the concern that additional, improper aggravating circumstances would be improperly weighed by the jury in the penalty phase in favor of the death penalty is not implicated. Cf. State v. Keene (Sept. 20, 1996), Montgomery App. No. 14375 (agreeing with Eleventh District Court of Appeals that concern in Penix was to prevent jury from considering both prongs of felony-murder specification in penalty phase). Appellant cannot contend that the jury improperly considered both prongs of the felony-murder specification during the penalty phase of the trial because the trial court's instruction during the penalty phase of this trial did not include both prongs of the felony-murder aggravating circumstance. Therefore, Penix is not dispositive of this assignment of error.
 {¶ 25} The trial court's instruction during the guilt phase of appellant's trial provided the jury with both of the alternative forms of the felony-murder death penalty specification found in R.C. 2929.04(A)(7). And, as noted earlier, the trial court properly instructed the jury that "[b]efore you can find the defendant guilty on an offense providing alternatives, you must be unanimous in your verdict as to any one alternative." The felony-murder specification instruction, when coupled with the trial court's instruction requiring unanimity for any alternatives, was not erroneous because the jury could not find appellant guilty of a felony-murder specification unless it unanimously agreed that appellant committed one of the alternatives. Cf. Clay, supra.
 {¶ 26} Moreover, the jury also found appellant guilty of death penalty specifications found in R.C. 2929.04(A)(4) and (5). Appellant does not address either of those findings in this appeal. Accordingly, even if we were to find error in the trial court's guilt phase instruction for the felony-murder specification, we cannot say that the outcome of this case clearly would have been different because the jury still found appellant guilty of other death penalty specifications and appellant still would have proceeded to the penalty phase of the trial. Appellant does not raise any assignments of error in relation to the penalty phase of the trial. Accordingly, appellant's third assignment of error is overruled.
 {¶ 27} Appellant contends in his fifth assignment of error that his trial counsel was ineffective for failing to object to the errors raised in his first, second, and third assignments of error. In order to prevail on an ineffective assistance of counsel claim, appellant must meet the two-prong test enunciated in Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052; accord State v. Bradley (1989), 42 Ohio St.3d 136, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258. Initially, appellant must show that counsel's performance was deficient. To meet that requirement, appellant must show counsel's error was so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Appellant may prove counsel's conduct was deficient by identifying acts or omissions that were not the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id. at 690. In analyzing the first prong of Strickland, there is a strong presumption that defense counsel's conduct falls within a wide range of reasonable professional assistance. Id. at 689. Appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Id., citing Michel v. Louisiana (1955),350 U.S. 91, 101, 76 S.Ct. 158.
 {¶ 28} If appellant successfully proves that counsel's assistance was ineffective, the second prong of the Strickland
test requires appellant to prove prejudice in order to prevail.Strickland, supra, at 692. To meet that prong, appellant must show counsel's errors were so serious as to deprive him of a fair trial, a trial whose result is reliable. Id. at 687. Appellant would meet this standard with a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
 {¶ 29} Having found no error in appellant's first and third assignments of error, trial counsel was not ineffective for failing to object to those jury instructions. See State v.Craun, 158 Ohio App.3d 389, 2004-Ohio-4403, at ¶ 15. Additionally, we cannot say that there is a reasonable probability that the result of appellant's trial would have been different had trial counsel objected to the admission of the taped conversations between appellant and Glenda Hodge which is the subject of appellant's second assignment of error. First, appellant's counsel stipulated that the conversations were between appellant and his ex-wife, Glenda Hodge. Therefore, the spousal incompetentcy rule would not bar these conversations from being played to the jury. State v. Sandoval (Mar. 15, 2002), Sandusky App. No. S-00-042; State v. Taylor (Aug. 10, 1988), Lorain App. No. 4280. Additionally, the conversations were largely favorable to appellant. Accordingly, even if trial counsel was ineffective for failing to object to the admission of the taped conversations, appellant was not prejudiced by that failure. Appellant's fifth assignment of error is overruled.
 {¶ 30} In his sixth assignment of error, appellant contends that his aggravated murder convictions were not supported by sufficient evidence. The Supreme Court of Ohio delineated the role of an appellate court presented with a sufficiency of the evidence argument in State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus:
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 {¶ 31} Whether the evidence is legally sufficient is a question of law, not fact. State v. Thompkins (1997),78 Ohio St.3d 380, 386. Indeed, in determining the sufficiency of the evidence, an appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v.Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781. Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. State v.Yarbrough, 95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 79; State v.Thomas (1982), 70 Ohio St.2d 79, 80. A verdict will not be disturbed unless, after viewing the evidence in the light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. Treesh; supra; Jenks, supra, at 273.
 {¶ 32} When the evidence is viewed in the light most favorable to the prosecution, it is clear that reasonable minds could find appellant guilty of aggravated murder beyond a reasonable doubt. Paul's testimony, if believed, provided sufficient evidence for a rational trier of fact to have found appellant guilty beyond a reasonable doubt for the aggravated murders of Palmer and Evans. Appellant owed Palmer a significant amount of money and was avoiding Palmer's requests for payment. Paul testified that appellant called him the day before the murders and asked him to assist him in robbing the Palmer house. The next day Paul, appellant, and Franklin went into the Palmer residence and bound Palmer and Evans on the kitchen floor. Paul further testified that he left the house and waited outside in the car and that when he left, Palmer and Evans were alive in the kitchen. While he and Franklin were waiting in the car, he heard multiple thumping sounds from inside the house and then saw appellant come out of the house.
 {¶ 33} Logs of phone calls made that day between appellant and Paul also corroborate Paul's testimony. Paul testified that he attempted to use his cell phone as a walkie-talkie by calling appellant's cell phone and leaving the phone on when appellant first entered Palmer's house. Phone logs of appellant's and Paul's cell phones show an incoming phone call on appellant's cell phone log and an outgoing call on Paul's cell phone log at 10:27 a.m., which was consistent with Paul's testimony and timeline. Additionally, there were no signs of forced entry into Palmer's house. A call log from a pay phone near Palmer's house indicated that a call was made to Palmer's cell phone at the approximate time Paul said such a call was made, and Palmer's cell phone log showed an incoming phone call at the same time. This evidence corroborates at least some aspects of Paul's testimony and demonstrates that the three men followed appellant's plan for the robbery. When viewed in the light most favorable to the prosecution, this evidence is sufficient for a rational trier of fact to find appellant guilty of the aggravated murders of both Palmer and Evans. Accordingly, appellant's sixth assignment of error is overruled.
 {¶ 34} Having overruled all of appellant's assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Bowman and Bryant, JJ., concur.