[Cite as *State v. Miller*, 2014-Ohio-3605.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 13AP-1022 |
| v. | : | (M.C. No. 2012 TRC 205452) |
| Nathan Glenn Miller, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on August 21, 2014

*Richard C. Pfeiffer, Jr.,* City Attorney, and *Melanie R. Tobias,* for appellee.

*Shaw & Miller,* and *Mark J. Miller,* for appellant.

APPEAL from the Franklin County Municipal Court

DORRIAN, J.

{¶ 1} Defendant-appellant, Nathan Glenn Miller ("appellant"), appeals from his conviction in the Franklin County Municipal Court on charges of operating a vehicle under the influence of alcohol ("OVI") and operating a vehicle with a prohibited concentration of blood alcohol ("OVI per se"). Because we conclude that the trial court did not err by denying appellant's motions to suppress certain evidence, we affirm.

{¶ 2} Appellant was charged with OVI, in violation of Columbus Traffic Code 2133.01(A)(1)(a), and OVI per se, in violation of Columbus Traffic Code 2133.01(A)(1)(d), following an accident that occurred in the early morning hours of December 9, 2012. Appellant entered a plea of not guilty and requested a jury trial on the charges. Appellant filed motions to suppress evidence relating to his arrest and evidence obtained as a result of a breath test administered by the police. The trial court conducted a hearing on appellant's motions to suppress.

{¶ 3} At the suppression hearing, appellant testified that he was driving a group of friends home from downtown Columbus when his car struck a pedestrian. Appellant stopped the car and called 911. Sergeant Jason Garner of the Columbus Division of Police testified that he was one of the police officers who responded to the initial accident call at 2:40 a.m. on December 9, 2012. Upon arriving at the scene, Sergeant Garner spoke with appellant and noticed a moderate odor of alcohol coming from appellant. Sergeant Garner called for a "Driving Impaired Criminal Enforcement" officer, Officer Greg Hudson, to further investigate whether appellant was intoxicated. Officer Hudson testified that he smelled an odor of alcohol on appellant's breath and observed that appellant's eyes were "bloodshot and glossy." (Tr. 37.) Officer Hudson further stated that appellant was unsteady when walking to the police cruiser and that, when asked, appellant admitted that he had consumed alcoholic beverages earlier in the evening. Officer Hudson conducted field sobriety tests on appellant. Officer Hudson testified that he first performed the horizontal gaze nystagmus test ("HGN test") on appellant and that appellant demonstrated six out of six "clues" indicating intoxication. He further testified that he conducted a walk-and-turn test and a one-leg-stand test and that appellant passed both of these tests. As a result of the field sobriety tests, Officer Hudson arrested appellant for OVI.

{¶ 4} Following the arrest, Officer Hudson read appellant Form BMV 2255, explaining the consequences of refusing a test of his blood alcohol level. Officer Hudson testified that he then asked appellant to take a breath test and appellant agreed. Officer Steven Wolfangel, who was operating the mobile breath testing unit that night, conducted the breath test on appellant. Officer Wolfangel testified that he noticed an odor of alcohol on appellant's breath. The breath test indicated that appellant had a blood alcohol level of 0.141. Based on this result, appellant was charged with OVI per se. On cross-examination, both Officer Hudson and Officer Wolfangel testified that appellant had asked what would occur if he refused to take the breath test. Officer Hudson testified that he told appellant he would get a warrant and have appellant's blood drawn for a blood alcohol test. Officer Wolfangel testified that he told appellant that, if appellant refused to take the breath test, he would advise Officer Hudson to take him to the hospital to have appellant's blood drawn for a blood alcohol test. Officer Wolfangel admitted that he did not mention getting

a warrant for the blood draw. The trial court was also presented with portions of the audio and video recordings from Officer Hudson's microphone and cruiser.

{¶ 5}   At the conclusion of the suppression hearing, the trial court denied appellant's motions to suppress. Appellant subsequently changed his plea to no contest as to both charges. Pursuant to the no-contest pleas, the trial court found appellant guilty on the charges of OVI and OVI per se.

{¶ 6}   Appellant appeals from the trial court's judgment, assigning four errors for this court's review:

> 1. The trial court erred in denying Appellant's Motion to Suppress the Breathalyzer test because the test was obtained through a submission to authority rather than voluntarily thereby triggering the exclusionary rule.
>
> 2. The trial court erred in denying Appellant's Motion to Suppress because the officers lacked reasonable articulable suspicion to ask the Appellant to perform the field sobriety tests.
>
> 3. The trial court erred in failing to suppress the results of the horizontal gaze nystagmus test because it was not done in substantial compliant [sic] with National Highway Traffic Safety Administration (NHTSA) standards.
>
> 4. The trial court erred in denying Appellant's Motion to Suppress because the arresting officer lacked probable cause to arrest the Appellant for OVI.

{¶ 7}   In ruling on a motion to suppress, the trial court acts as the trier of fact and is in the best position to resolve factual issues and witness credibility. *State v. Montelauro*, 10th Dist. No. 11AP-413, 2011-Ohio-6568, ¶ 6. Therefore, an appellate court must accept the trial court's findings of fact if competent, credible evidence supports them. *Id.* However, an appellate court must independently determine as a matter of law, without deference to the trial court's conclusions, whether the trial court's decision meets the appropriate legal standard. *Id.*

{¶ 8}   We begin with appellant's second assignment of error, in which he argues that the trial court erred in denying his motion to suppress because the officers lacked a reasonable suspicion that appellant was intoxicated. Appellant asserts that the officers

lacked a basis for requesting that he perform field-sobriety tests and that, as a result, the trial court should have suppressed the evidence related to his arrest.

{¶ 9} The Fourth and Fourteenth Amendments to the United States Constitution, as well as the Ohio Constitution, protect individuals against unreasonable searches and seizures by agents of the government. *State v. Mossman*, 10th Dist. No. 13AP-959, 2014-Ohio-2620, ¶ 6. "For purposes of the Fourth Amendment, a person has been seized when an officer conducts an investigative stop and detains the person in order to administer field sobriety tests." *Upper Arlington v. Wissinger*, 10th Dist. No. 13AP-922, 2014-Ohio-1601, ¶ 15, citing *State v. Robinette*, 80 Ohio St.3d 234, 240-41 (1997). "Accordingly, before an officer may conduct field sobriety tests, an officer must have reasonable suspicion based upon specific, articulable facts that a driver is intoxicated." *Wissinger* at ¶ 15. Appellant asserts that the officers lacked a reasonable suspicion that he was intoxicated because none of them witnessed him driving erratically, his speech was clear, and only one of the three officers who observed appellant testified that his eyes were glossy and bloodshot.

{¶ 10} In *Mossman*, a state trooper observed an individual driving in excess of the posted speed limit at 2:15 a.m. on a Sunday. *Mossman* at ¶ 2. After stopping the driver and approaching the vehicle, the trooper detected a strong odor of alcohol coming from the vehicle. When questioned, the driver admitted she had some alcoholic drinks about 30 minutes before she was stopped. *Id.* The trooper asked the driver to perform field-sobriety tests. Based on her performance on the field-sobriety tests, the trooper arrested the driver for OVI. *Id.* At a hearing on a motion to suppress, the trooper admitted that he did not observe any impaired driving or erratic behavior by the driver and that she did not have slurred speech. *Id.* at ¶ 3. On appeal, this court reversed the trial court's judgment granting the motion to suppress, concluding that the officer had a reasonable suspicion that the driver was intoxicated based on the driver's excessive speed, the time of the stop, the odor of alcohol in the vehicle, and the driver's acknowledgement of drinking. *Id.* at ¶ 13.

{¶ 11} Similarly, in *Montelauro*, after stopping a vehicle at 1:46 a.m. for having expired tags, a police officer noticed an obvious odor of alcohol and that the driver had glossy, bloodshot eyes. *Montelauro* at ¶ 10. Additionally, the driver admitted to drinking a

particularly strong type of beverage made with several different alcoholic components. *Id.* at ¶ 11. The driver admitted to having left a particular bar and the officer knew that drinks at that bar had been half price that night. *Id.* at ¶ 12. Under these circumstances, this court concluded that the officer had reasonable suspicion to conduct field-sobriety tests. *Id.* at ¶ 19. *See also State v. Perkins*, 10th Dist. No. 07AP-924, 2008-Ohio-5060, ¶ 11-12 (holding that police officer had reasonable suspicion to conduct field-sobriety tests when driver was stopped at 1:30 a.m. after the officer observed the driver speeding, weaving within his own lane, and making an illegal right turn, and when the officer noticed a strong odor of alcohol and that the driver's eyes were bloodshot and glassy after making the traffic stop); *Columbus v. Anderson*, 74 Ohio App.3d 768, 770 (10th Dist.1991) (holding that police officer had reasonable suspicion to conduct field-sobriety tests when driver was stopped in early morning hours after the officer observed the driver speeding and when the officer noticed a moderate odor of alcohol on the driver after making the traffic stop).

{¶ 12} In the present case, appellant's car struck a pedestrian in the early morning hours of Sunday, December 9, 2012. The initial responder, Sergeant Garner, testified that the car involved in the accident was stopped when he arrived at the scene; therefore, none of the police officers observed any erratic driving by appellant. Both Sergeant Garner and Officer Hudson testified that appellant spoke clearly and was polite and cooperative. Sergeant Garner, Officer Hudson, and Officer Wolfangel each testified that they noticed an odor of alcohol on appellant. Additionally, Officer Hudson, who conducted the field-sobriety tests, testified that appellant's eyes were glossy and bloodshot and that he seemed unsteady or off-balance when walking to the patrol car.  Officer Hudson testified that he asked appellant whether he had consumed any alcohol and that appellant responded that he had just left work and had been drinking there.  On cross-examination, Officer Hudson testified that he did not ask appellant what type of drinks he had or how many he had consumed.

{¶ 13} We find that, under the circumstances presented here, there were specific, articulable facts giving rise to a reasonable suspicion that appellant was intoxicated, thereby justifying Officer Hudson's request that appellant perform field-sobriety tests. The police encountered appellant during the early morning hours, and all three of the

officers who interacted with appellant testified that they observed the odor of alcohol on his person. Officer Hudson testified that appellant's eyes were bloodshot and glossy, similar to the drivers in *Montelauro* and *Perkins*. Additionally, appellant admitted that he had been drinking earlier in the evening. Finally, although no erratic or illegal driving was observed, appellant had been involved in an incident in which he struck a pedestrian. While appellant was ultimately determined not to have been at fault for striking the pedestrian, it is unclear when that determination was made in relation to the timing of the field-sobriety tests. In light of these facts, the officers had a reasonable suspicion that appellant was intoxicated, and the trial court did not err by denying appellant's motion to suppress.

{¶ 14} Accordingly, we overrule appellant's second assignment of error.

{¶ 15} Next, we turn to appellant's third assignment of error, in which he argues that the trial court erred by denying his motion to suppress the results of the HGN test. Appellant asserts that the trial court should have suppressed the HGN test results because Officer Hudson did not substantially comply with the National Highway Traffic Safety Administration ("NHTSA") standards.

{¶ 16} Results of field-sobriety tests are admissible at trial in a prosecution for violating Columbus Traffic Code 2133.01(A) if it is shown by clear and convincing evidence that the police officer administered the test in substantial compliance with the applicable NHTSA testing standards. Columbus Traffic Code 2133.01(D)(4)(b); *Columbus v. Murphy*, 10th Dist. No. 09AP-757, 2011-Ohio-949, ¶ 26. *See also State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, ¶ 28 (applying R.C. 4511.19(D)(4)(b), which is the statutory analogue to Columbus Traffic Code 2133.01(D)(4)(b)). "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 17} Appellant argues that Officer Hudson did not substantially comply with the NHTSA standards because, before performing the HGN test, he did not instruct appellant to continue following the stimulus with his eyes until told to stop. At the suppression

hearing, the city prosecutor introduced Section VIII of the 2006 NHTSA manual, titled "Concepts and Principles of the Standardized Field Sobriety Tests." With respect to the HGN test, the manual indicates that the officer should give the following instructions: (1) "I am going to check your eyes"; (2) "Keep your head still and follow this stimulus with your eyes only"; and (3) "Keep following the stimulus with your eyes until I tell you to stop." The city prosecutor also introduced a copy of the video recording from Officer Hudson's cruiser showing him administering the field-sobriety tests. This recording indicates that, prior to conducting the HGN test, Officer Hudson asked appellant whether he was wearing glasses or contact lenses and whether he had any problems with his eyes. Officer Hudson then instructed appellant to follow Officer Hudson's finger with his eyes without moving his head. Officer Hudson did not specifically instruct appellant to keep following his finger until told to stop.

{¶ 18} Appellant argues that his case is similar to this court's recent *Wissinger* decision. In *Wissinger*, the police officer first asked the driver to follow a pen with his eyes without moving his head while the driver was still seated in his vehicle and the officer was standing outside the window. *Wissinger* at ¶ 5. The officer later directed the driver to exit his car and conducted field-sobriety tests, including the HGN test. *Id.* at ¶ 6-7. This court affirmed the trial court's conclusion that the officer did not provide sufficient instructions to the driver before administering the HGN test. *Id.* at ¶ 9. The officer testified that he observed six out of six signs of impairment when conducting the HGN test, but the record was unclear as to whether the officer observed those signs during the first test or the second test. *Id.* at ¶ 25. With respect to the first test, conducted while the driver was still seated in his vehicle, the officer only asked the driver whether he could see the officer's pen and then instructed him to keep his head still and follow it with his eyes. *Id.* at ¶ 22. This court found that those instructions did not substantially comply with the NHTSA manual because the officer did not ask the driver whether he was wearing contact lenses, did not inform the driver that he was going to check his eyes, and did not tell the driver to keep focusing on the pen until he was told to stop. *Id.* at ¶ 24.

{¶ 19} With respect to Officer Hudson's instructions for the HGN test, we conclude that this case is distinguishable from *Wissinger*. In this case, appellant only complains that Officer Hudson failed to include the "until I tell you to stop" portion of the

instructions set forth in the NHTSA manual. By contrast, there were numerous errors and omissions in *Wissinger*, including the fact that the officer conducted the first HGN test while the driver was still seated in his car, failed to ask the driver whether he wore contact lenses, *and* failed to instruct the driver to continue following the stimulus until told to stop. Officer Hudson did not strictly comply with the NHTSA, but strict compliance is not the applicable standard. *See* Columbus Traffic Code 2133.01(D)(4)(b); *Murphy* at ¶ 26. Under the circumstances in this case, we conclude that Officer Hudson's instructions substantially complied with the NHTSA standard. *See State v. Henry*, 12th Dist. No. CA2008-05-008, 2009-Ohio-10, ¶ 23 (concluding in part that a state trooper substantially complied with NHTSA standards in conducting the HGN test, despite failing to instruct the individual being tested to keep following the stimulus with his eyes only until being told to stop).

{¶ 20} Appellant also asserts that Officer Hudson did not comply with the NHTSA standards in conducting the HGN test because he did not hold the stimulus at maximum deviation for the required period of time. The NHTSA manual introduced at the suppression hearing provides that, when checking for distinct and sustained nystagmus at maximum deviation, the officer should hold the stimulus at maximum deviation for a minimum of four seconds. Officer Hudson testified that he held his finger at maximum deviation for at least four seconds. He further testified that, when performing this portion of the test, he keeps count in his head by thousandths (i.e., "1,001, 1,002, 1,003, etc.") and that he tries to hold the stimulus at the maximum deviation point for a count of five. Unfortunately, due to the quality of the video recording from Officer Hudson's police cruiser and the position of Officer Hudson relative to the camera, it is difficult to determine precisely how long he held the stimulus at maximum deviation; however, it appears to be approximately four seconds. Based on Officer Hudson's testimony and a review of the video, we conclude that he substantially complied with the NHTSA standards in conducting this portion of the HGN test.

{¶ 21} Moreover, we note that Officer Hudson testified that appellant demonstrated six clues on the HGN test. Two of the clues were based on the maximum deviation portion of the test. Therefore, even discounting the maximum deviation portion of the test, appellant would have demonstrated four clues, which Officer Hudson testified

is considered a reliable indicator of blood alcohol content in excess of 0.10. *See State v. Tyner*, 2d Dist. No. 25405, 2014-Ohio-2809, fn. 3 (affirming denial of motion to suppress where officer testified that he was "a little quick" and did not hold stimulus at maximum point for the full four seconds, based on the court's reasoning that the officer identified six clues of intoxication during the HGN test and even ignoring the two clues derived from the maximum deviation portion, four valid clues of intoxication would remain).

{¶ 22} Accordingly, we overrule appellant's third assignment of error.

{¶ 23} In his fourth assignment of error, appellant asserts that the trial court erred by denying his motion to suppress because Officer Hudson lacked probable cause to arrest him for OVI. Based on his third assignment of error, appellant asserts that the trial court should have excluded the results of the HGN test. Appellant argues that there was insufficient additional evidence of intoxication to establish probable cause because the officers did not observe him driving erratically, his speech was not slurred, only one officer testified that his eyes were bloodshot and glossy, and he did not admit to any specific amount of drinking.

{¶ 24} Probable cause for an OVI arrest exists when "at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." *State v. Homan*, 89 Ohio St.3d 421, 427 (2000), *superseded by statute on other grounds as stated in Boczar* at ¶ 11-16. In determining whether probable cause existed, the court must consider the totality of the facts and circumstances surrounding the arrest. *Id.*

{¶ 25} Similar to the present case, in *Perkins*, the driver argued that there was no probable cause to arrest him for OVI because the HGN test was not performed in substantial compliance with the NHTSA standard. *Perkins* at ¶ 27. He further argued that no probable cause existed because he was stopped for a minor traffic violation, he had offered an explanation for the odor of alcohol, he did not admit to drinking, and his speech was clear. *Id.* This court rejected the argument, holding that, based on the totality of circumstances, there was probable cause for arrest in *Perkins*. As explained above, the court concluded that the HGN test was admissible. Although the driver's speech was clear and he was polite and cooperative, the evidence demonstrated that he was stopped in the

early morning hours after being observed making an illegal right turn, exceeding the speed limit, and weaving within his own lane. *Id.* at ¶ 30. Additionally, the state trooper noticed a strong odor of alcohol that continued after he left the car, which contradicted the driver's explanation that alcohol had been spilled in the car the previous day. The trooper observed that the driver's eyes were bloodshot and glassy, and he exhibited four of six clues on the HGN test. *Id.* Under those circumstances, the *Perkins* court found that the facts were sufficient to permit a prudent person to believe that the driver was driving under the influence of alcohol and, therefore, probable cause existed for the arrest. *Id.* at ¶ 31. *See also State v. Morgan*, 10th Dist. No. 05AP-552, 2006-Ohio-5297, ¶ 41 (holding that probable cause for arrest existed based on state trooper's testimony that he observed a strong odor of alcohol on or about the driver's person, that the driver's eyes were bloodshot and glassy, and that the driver exhibited six clues on the HGN test, and where the driver admitted to having consumed alcohol); *Columbus v. Weber*, 10th Dist. No. 06AP-845, 2007-Ohio-5446, ¶ 26-27 (concluding that probable cause for arrest existed where driver had strong odor of alcohol emanating from his person, had bloodshot and glassy eyes, and exhibited three clues on the "walk-and-turn" field sobriety test).

{¶ 26} The officers testified at the suppression hearing that appellant was polite and cooperative, and there was no evidence that appellant demonstrated slurred speech. Additionally, none of the officers witnessed erratic driving because appellant's car was stopped by the time they arrived on the scene. However, all three officers testified that there was an odor of alcohol on appellant. Appellant admitted to drinking and had been involved in an accident in the early morning hours. Officer Hudson testified that appellant's eyes were bloodshot and glossy and that he seemed off-balance. Further, appellant exhibited six clues on the HGN test. Considering the totality of the circumstances, we conclude that the facts within the knowledge of Officer Hudson were sufficient to cause a prudent person to believe that appellant was driving under the influence of alcohol. Therefore, we conclude that the facts were sufficient to establish probable cause for the arrest. The trial court did not err by denying appellant's motion to suppress for lack of probable cause.

{¶ 27} Accordingly, we overrule appellant's fourth assignment of error.

{¶ 28} Finally, we turn to appellant's first assignment of error, in which he argues that the trial court erred by denying his motion to suppress the results of the breath test. Appellant argues that he did not voluntarily consent to take the breath test and that he only submitted to the test as a result of a threat that the officers would have his blood drawn for a test if he refused the breath test.

{¶ 29} "When a person is lawfully detained by police and consents to a search, the state must show by clear and convincing evidence that the consent was freely and voluntarily given." *State v. Lattimore*, 10th Dist. No. 03AP-467, 2003-Ohio-6829, ¶ 14. "Important factors in determining the voluntariness of consent are: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found." *Id.*

{¶ 30} Appellant focuses on alleged coercive police conduct, but we briefly note the additional factors set forth in *Lattimore*. Appellant was in police custody at the time he consented to the breath test, having already been placed under arrest following the field sobriety tests. Prior to questioning whether he should take the breath test, he had generally been polite and cooperative with the officers. Appellant had admitted to drinking earlier in the evening and expressed doubt about whether to take the breath test, making it unlikely that he believed no incriminating evidence would be found. Officer Hudson had previously read appellant Form BMV 2255, which explained the consequences of refusing to submit to chemical testing of his blood alcohol content. After being read Form BMV 2255, appellant initially indicated to Officer Hudson that he consented to take the breath test.

{¶ 31} Appellant claims that he was subject to coercive police procedures when, immediately before Officer Wolfangel administered the breath test, appellant asked whether he should take the test. Officer Wolfangel explained that, if appellant declined to take the breath test, he would advise Officer Hudson to take appellant to a hospital and have blood drawn for a blood alcohol test. Officer Wolfangel did not state that the officers would obtain a warrant prior to having his blood drawn. Appellant argues that the officers

lacked probable cause for issuance of a warrant to have his blood drawn and exceeded their authority by threatening to have his blood drawn without a warrant.

{¶ 32} As explained above, we find that there was sufficient evidence to constitute probable cause to arrest appellant for OVI. These same factors likely would have constituted probable cause for a search warrant permitting the officers to have appellant's blood drawn. *See State v. Biddings*, 49 Ohio App.3d 83, 84 (10th Dist.1988) ("The state may obtain blood from a defendant by execution of a search warrant against the defendant's wishes where there is probable cause to believe that evidence relating to a crime will be found therein."). Although it would have been more accurate for the officers to inform appellant that, if he refused the breath test, they would have sought a warrant to have his blood drawn and that, if that warrant had been issued, they would have had a blood draw performed, we cannot conclude that their failure to explain the process in precise detail negated appellant's otherwise voluntary consent. Under the facts presented in this case, we find that consent was freely and voluntarily given. *See Columbus v. Dixon*, 10th Dist. No. 07AP-536, 2008-Ohio-2018, ¶ 7; *State v. Oke*, 6th Dist. No. WD-04-082, 2005-Ohio-6525, ¶ 45-48; *State v. Dunwoody*, 5th Dist. No. 2004CA9, 2005-Ohio-219, ¶ 17-20. Therefore, the trial court did not err by denying appellant's motion to suppress the results of the breath test.

{¶ 33} Accordingly, we overrule appellant's first assignment of error.

{¶ 34} For the foregoing reasons, we overrule appellant's four assignments of error and affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

KLATT and LUPER SCHUSTER, JJ., concur.

————————————————