[Cite as *Columbus v. Horton*, 2014-Ohio-4584.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| City of Columbus, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 13AP-966 |
| v. | : | (M.C. No. 2013 TRC 105492) |
| Miles A. Horton, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on October 16, 2014

*Richard C. Pfeiffer, Jr.*, City Attorney; *Lara N. Baker*, City Prosecutor, and *Melanie R. Tobias*, for appellee.

*D. Timothy Huey*; *Kura, Wilford & Schregardus Co., L.P.A.*, and *Sarah M. Schregardus*, for appellant.

APPEAL from the Franklin County Municipal Court

KLATT, J.

{¶ 1} Defendant-appellant, Miles A. Horton, appeals from a judgment of conviction and sentence entered by the Franklin County Municipal Court. For the following reasons, we affirm that judgment.

I. Factual and Procedural Background

{¶ 2} In the early morning hours of January 21, 2013, Sergeant Tim Myers of the Columbus Police Department was driving his police car north on High Street in the Short North area of Columbus, Ohio. Sergeant Myers encountered a car that was stopped in his lane. Sergeant Myers was required to stop. He observed people getting into the car and then the car proceeded northbound on High Street. Because the car impeded Sergeant

Myers' ability to drive in the lane, he decided to pull the car over for violating Columbus City Code 2133.04(A) (impeding traffic).[1]

{¶ 3}   The car, driven by appellant, pulled into a parking lot.   Sergeant Myers approached the car and made contact with appellant.   Sergeant Myers noticed that appellant's eyes were glassy and bloodshot.   He also smelled an odor of alcoholic beverages inside the car.   Sergeant Myers suspected that appellant may have been impaired, so he asked him to recite the alphabet, starting at the letter D and ending at the letter X.   Appellant attempted to do so but started with the letter E and said the letter U twice.   At that point, Sergeant Myers asked appellant to exit the car to determine whether the alcohol smell was from appellant or from other people in the car.   Once outside the car, Sergeant Myers could still smell a moderate odor of alcohol coming from appellant. Sergeant Myers asked appellant how many drinks he had that night.   Appellant told him that he had two drinks two hours earlier and that he had also taken some anti-anxiety medicine.   Sergeant Myers suspected that appellant was driving impaired.

{¶ 4}   At some point during the encounter, Columbus Police Officers William Scott and Jill Woolley arrived on the scene to assist Sergeant Myers.   Sergeant Myers informed the officers of his observations of appellant before turning appellant over to them. Officers Scott and Woolley performed field sobriety tests ("FST") on appellant.   Both officers also thought that appellant's eyes were glassy and bloodshot and that he smelled of alcohol.

{¶ 5}   Officer Scott first asked appellant if he would take a portable breath test ("PBT").   He declined but agreed to perform other FSTs.   Officer Scott first performed the horizontal gaze nystagmus test ("HGN").   During the test, Officer Scott observed six out of six clues indicating to him that appellant was impaired.   Officer Woolley then performed two other FSTs: the walk-and-turn and the one-leg stand.   Although appellant passed both of these tests, exhibiting only one clue on each test, Officer Woolley observed him swaying during the one-leg stand.   Following these tests, appellant was arrested for OVI and taken to police headquarters.   Officer Scott then performed an alcohol breath test on appellant.   Appellant's test result was .108, which is over the legal limit.

---

[1] That charge is not at issue in this appeal.

{¶ 6}    As a result of these events, appellant was charged with two counts of operating a vehicle while under the influence in violation of Columbus City Code 2133.01(A)(1)(a) ("OVI impaired") and 2133.01(A)(1)(d) ("OVI per se").[2]    Appellant entered a not guilty plea to the charges and proceeded to a jury trial.

{¶ 7}    Before trial, appellant filed a motion to suppress the results of the FSTs he performed during the traffic stop as well as the results of the alcohol breath test he took while at police headquarters.  At the motion hearing, appellant argued that the results of the alcohol breath test had to be suppressed because Officer Scott did not properly renew his operator's permit to conduct the test and that the police did not have probable cause to arrest him.  The trial court overruled appellant's motion.

{¶ 8}    At trial, the officers testified to the above version of events.  The video of the traffic stop, which included the walk-and-turn and the one-leg stand FSTs but not the s HGN test, was also played to the jury.  The jury ultimately acquitted appellant of the OVI impaired charge but found him guilty of the OVI per se charge.  The trial court sentenced him accordingly.

## II.  The Appeal

{¶ 9}    Appellant appeals his conviction and sentence and assigns the following errors:

> [1.] The trial court violated Appellant's right of confrontation, right to present a complete defense and right to have the jury determine his guilt beyond a reasonable doubt based upon all relevant evidence by prohibiting cross-examination of the State's witness regarding how the breath machine works and regarding the specific breath testing device used to test his breath and regarding matters that could have caused his specific test result to be less than one hundred percent accurate.
>
> [2.] The trial court erred when it found the Officers had probable cause to arrest Miles Horton for OVI.

---

[2] OVI charges are commonly referred to as either impaired or per se.  *See State v. Brand*, 157 Ohio App.3d 451, ¶ 11-12 (1st Dist.2004), citing *Newark v. Lucas*, 40 Ohio St.3d 100 (1988). The impaired charge generally prohibits impaired driving, while a per se charge prohibits operation of a vehicle with certain concentrations of alcohol and drugs in a person's system.  *State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, ¶ 18.

[3.] The trial court erred when it found Officer Scott possessed a valid senior operator's permit as required to administer the test to Appellant.

{¶ 10} For ease of analysis, we first address the second and third assignments of error together because they both address the trial court's denial of appellant's motion to suppress.

## A. Appellant's Second and Third Assignments of Error—The Motion to Suppress

{¶ 11} " 'Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.' " (Citations omitted.)  *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

## 1. Did the Police have Probable Cause to Arrest Appellant for OVI?

{¶ 12} Appellant first argues that the trial court erred by concluding that the officers had probable cause to arrest him for OVI.  We disagree.

{¶ 13} The standard for determining whether there was probable cause to arrest for OVI is whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence.  *State v. Miller*, 10th Dist. No. 13AP-1022, 2014-Ohio-3605, ¶ 24, citing *State v. Homan*, 89 Ohio St.3d 421, 427 (2000).  That determination is based on the totality of the facts and circumstances surrounding the arrest.  *Id.*  Whether or not there was probable cause is a legal issue that we review de novo.  *State v. Bish*, 191 Ohio App.3d 661, 2010-Ohio-6604, ¶ 47 (7th Dist.)

{¶ 14} Appellant first argues that the officers lacked probable cause to arrest him because he passed two of the three FSTs and the one he failed was the only one not

captured on video that morning.  He also argues that his minor traffic offense–impeding traffic–was not indicative of impaired driving.  These arguments are unavailing, as they fail to consider the totality of the circumstances.  Even though appellant passed two of the three FSTs and committed a minor traffic offense, the totality of the circumstances provided the officers with probable cause to arrest appellant.

{¶ 15} Specifically, each of the officers testified that appellant's eyes appeared glassy and bloodshot, that he slurred his speech, and that they smelled an alcohol odor coming from appellant.  Appellant also admitted to the officers that he had two drinks before he was stopped.  Lastly, Officer Scott testified that appellant failed the HGN test and both Officers Scott and Woolley testified that appellant was swaying as he performed the one-leg stand.  Given the totality of these circumstances, the police had probable cause to arrest appellant for OVI.  *State v. Morgan*, 10th Dist. No. 05AP-552, 2006-Ohio-5297, ¶ 41 (finding probable cause under essentially identical facts).

{¶ 16} Appellant also argues that the trial court erred by considering his refusal to take the PBT in the probable cause determination.  First, it is not clear from the trial court's written decision that it considered appellant's refusal to take the PBT in its probable cause analysis.  Second, while there is a split of authority in this state concerning the admissibility of PBT *results* in a probable cause determination, *see State v. Henry*, 191 Ohio App.3d 151, 2010-Ohio-5171, ¶ 33 (6th Dist.); *Columbus v. Dials*, 10th Dist. No. 04AP-1099, 2006-Ohio-227, ¶ 17, we have found no court that has addressed whether a *refusal* to take a PBT can be considered in a trial court's probable cause determination.  However, even assuming it would be error, the totality of the circumstances addressed above provided probable cause to arrest even without considering appellant's refusal to take the PBT.  Therefore, any such error would be harmless.  *Morgan* at ¶ 41 (finding probable cause without consideration of PBT results); *Henry* at ¶ 36; *Columbus v. Shepherd*, 10th Dist. No. 10AP-483, 2011-Ohio-3302, ¶ 35.

### 2. Did Officer Scott Have a Valid Permit to Conduct Appellant's Breath Alcohol Test?

{¶ 17} Appellant also argues that the trial court erred by concluding that the officer who conducted his breath alcohol test had a valid operator's permit to conduct the test.  We disagree.

{¶ 18} When a defendant challenges the results of a breath alcohol test by way of a motion to suppress, the state has the burden to show that the test was administered in substantial compliance with the Ohio Department of Health ("ODH") regulations. *State v. Burnside* at ¶ 24; *State v. Plummer*, 22 Ohio St.3d 292, 294 (1986). This substantial compliance standard excuses errors that are clearly de minimis, errors which the Supreme Court of Ohio has characterized as " 'minor procedural deviations.' " *Burnside* at ¶ 34, quoting *Homan* at 426.

{¶ 19} The nature of the city's burden to establish substantial compliance is determined by the degree of specificity with which the defendant challenges the legality of the test. *Columbus v. Morrison*, 10th Dist. No. 08AP-311, 2008-Ohio-5257, ¶ 9, citing *State v. Johnson*, 137 Ohio App.3d 847, 851 (12th Dist.2000). For example, when a defendant's motion to suppress raises only general claims, the burden imposed on the city is general and slight. *Id.*, citing *State v. Embry*, 12th Dist. No. CA2003-11-110, 2004-Ohio-6324, ¶ 29; *State v. Mai*, 2d Dist. No. 2005-CA-115, 2006-Ohio-1430, ¶ 19. The city is only required to present general testimony that there was substantial compliance with the requirements of the regulations; specific evidence is not required unless the defendant raises a specific issue in the motion to suppress. *Morrison*; *State v. Bissaillon*, 2d Dist. No. 06-CA-130, 2007-Ohio-2349, ¶ 12; *State v. Crotty*, 12th Dist. No. CA2004-05-051, 2005-Ohio-2923, ¶ 19.

{¶ 20} In the present case, appellant generally claimed in his motion to suppress that the operator who conducted his breath test "was not licensed to operate the instrument analyzing the Defendant's alcohol level * * * [and] did not have a valid permit that was issued by the director pursuant to [R.C.] 3701.143 [and] OAC 3701-53-09." He did not raise any specific factual issues of noncompliance in the motion. Thus, the city's burden to establish substantial compliance with the regulations was slight, and only required the city to generally prove substantial compliance.

{¶ 21} Officer Scott testified that he first received an operator's permit to conduct alcohol breath tests on a BAC Datamaster instrument in either 2009 or 2010. He further testified that he renewed his operator's permit effective March 31, 2012, approximately ten months prior to the test he performed on appellant on January 21, 2013. At that time,

an individual who held an operator's permit could renew that permit if they satisfied former Ohio Adm.Code 3701-53-09(F),[3] which provided, in relevant part:

> To qualify for renewal of a permit under paragraph (A) or (B) of this rule:
>
> (1) A permit holder shall present evidence satisfactory to the director that he or she continues to meet the qualifications established by the applicable provisions of rule 3701-53-07 of the Administrative Code for issuance of the type of permit sought.
>
> * * *
>
> (3) If the individual seeking a renewal permit currently holds an operator or senior operator permit, the permit holder shall have completed satisfactorily an in-service course for the applicable type of evidential breath testing instrument which meets the requirements of paragraph (B) of this rule, which includes review of self-study materials furnished by the director.

{¶ 22} Appellant alleges that there was no proof that Officer Scott completed an in-service course for the 2012 renewal of his permit. In light of the general and slight burden imposed on the city, however, it was not required to present such specific testimony. Instead, the city met its burden to show substantial compliance by admitting into evidence Officer Scott's valid permit and his testimony that he renewed his permit. *State v. Cromer*, 10th Dist. No. 12AP-943, 2013-Ohio-4054, ¶ 24; *State v. Drake*, 5th Dist. No. 13CA15, 2014-Ohio-509, ¶ 14-15.

### 3. Conclusion

{¶ 23} For these reasons, the trial court did not err by denying appellant's motion to suppress. Accordingly, we overrule his second and third assignments of error.

### B. Appellant's First Assignment of Error—Cross-Examination

{¶ 24} In this assignment of error, appellant argues that the trial court impermissibly limited his right to cross-examine Officer Scott regarding the reliability of the chemical breath test he administered. Specifically, the trial court prohibited questions relating to: (1) whether appellant had the flu on the night of his arrest and whether the flu

---

[3] The current version of that administrative code, effective after Officer Scott's 2012 renewal, eliminated the in-service course as a requirement for renewal.

would have caused a fever; and (2) whether appellant's cell phone was in the room during the breath test. Appellant contends that both of these facts could have impacted his particular test results.

### 1. Attacks on Breath Test Results

{¶ 25} Ohio has legislatively resolved the question of the general reliability of tests for blood alcohol content. *State v. Vega*, 12 Ohio St.3d 185, 188 (1984), citing R.C. 4511.19; *State v. Luke*, 10th Dist. No. 05AP-371, 2006-Ohio-2306, ¶ 22. Given that legislative determination, the Supreme Court of Ohio in *Vega* concluded that "an accused may not make a general attack upon the reliability and validity of the breath testing instrument" but "may * * * attack the reliability of the specific testing procedure and the qualifications of the operator." *Id.* at 189-90; *Luke* at ¶ 25-26.

### 2. Officer Scott's Proferred Testimony

{¶ 26} Appellant's counsel questioned Officer Scott during cross-examination about the effect that a sample's temperature would have on a test result. The officer stated that if a person's temperature is higher than a certain level, it will raise the result of the sample. (Tr. 393.) The officer did not know the precise impact an elevated temperature would have on the test result. Officer Scott also testified the machine would provide an error message if the body temperature was too high. (Tr. 393.) At this point in his testimony, the state objected, arguing that the questions were general attacks on the reliability of the testing machine that are prohibited under *Vega*. Appellant's counsel ceased the line of questioning but asked the trial court for permission to make a proffer of the questions he sought to ask. The trial court granted his request.

{¶ 27} During the proffer, appellant's counsel again asked Officer Scott about the effect a person's temperature would have on a sample result. Again, Officer Scott replied that the machine would give an error message if the sample temperature exceeded the acceptable range of value. (Tr. 434.) Officer Scott acknowledged that appellant reported to the police that night that he had the flu and that someone with a flu could have an elevated temperature. However, Officer Scott testified that he did not know how an elevated temperature would affect appellant's individual breath test that evening. (Tr. 439.)

{¶ 28} Appellant's counsel also asked Officer Scott to identify the location of appellant's cell phone during the breath test that morning. Based upon Officer Scott's testimony, it is unclear whether appellant's cell phone was in the room when Officer Scott administered the breath test. (Tr. 443-44.) The trial court ultimately refused to allow appellant's proffered questions.

### 3. The Trial Court did not Abuse its Discretion by Limiting Cross-Examination of Officer Scott

{¶ 29} A trial court has the discretion to limit the scope of cross-examination taking into account the particular facts of a case. *State v. Treesh*, 90 Ohio St.3d 460, 480-81 (2001); *State v. Hodge*, 10th Dist. No. 04AP-294, 2004-Ohio-6980, ¶ 10. Therefore, an appellate court will not disturb a trial court's limits on the scope of cross-examination unless the trial court has abused its discretion. *State v. Casner*, 10th Dist. No. 10AP-489, 2011-Ohio-1190, ¶ 11; *Hodge* at ¶ 10. Although an abuse of discretion is typically defined as an unreasonable, arbitrary, or unconscionable decision, *State v. Beavers*, 10th Dist. No. 11AP-1064, 2012-Ohio-3654, ¶ 8, we note that no court has the authority, within its discretion, to commit an error of law. *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶ 70.

{¶ 30} Appellant contends that the trial court erred by prohibiting his questions because they concerned the specific testing procedure Officer Scott used for his breath test. Regardless of whether appellant's proffered questions address the general reliability of the machine used that morning or the specific testing procedure utilized, the trial court did not abuse its discretion by refusing to allow the questions because appellant did not lay the proper foundation for such questions. *State v. Sabo*, 10th Dist. No. 04AP-1114, 2006-Ohio-1521, ¶ 22 (noting that even if challenge was to specific testing procedures, trial court properly excluded testimony based on lack of evidentiary support).

{¶ 31} Specifically, Officer Scott testified during the proffer that he did not know how much an elevated temperature would affect appellant's test results. *Casner* at ¶ 14-15 (no abuse of discretion in limiting cross-examination where witness lacked knowledge to testify about issue). Nor was there any evidence that appellant had an elevated temperature when he took the alcohol breath test. Given the lack of a sufficient

evidentiary basis to challenge appellant's individual breath test, the trial court did not abuse its discretion when it prohibited appellant's proffered questions.

{¶ 32} To the extent that appellant sought to question the officer about the location of appellant's cell phone (which could arguably cause radio frequency interference that can interfere with the accuracy of breath testing equipment),[4] his argument is premised on the allegation that the cell phone was in the room when the test was conducted. A review of Officer Scott's testimony, however, reveals that the location of the cell phone during the test is unclear. We note, however, that Officer Scott testified he is "very clear to make sure there are no radio signals there." (Tr. 444.) It is appellant's burden to come forward with evidence indicating that prohibited radio interference occurred at the relevant time. *Greenville v. Holzapfel*, 85 Ohio App.3d 383, 389 (2d Dist.1993). Appellant did not present any specific evidence that the cell phone was in the room where the test was conducted.

{¶ 33} For these reasons, the trial court did not abuse its discretion by limiting appellant's cross-examination of Officer Scott because appellant failed to lay the proper foundation for the questions he claims were erroneously prohibited. Accordingly, we overrule appellant's first assignment of error.[5]

### III. Conclusion

{¶ 34} Having overruled appellant's three assignments of error, we affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

CONNOR and LUPER SCHUSTER, JJ., concur.

_____

[4] *Greenville v. Holzapfel*, 85 Ohio App.3d 383, 386 (2d Dist.1993).

[5] In light of our disposition of appellant's first assignment of error, we deny his motion for supplemental briefing and argument in light of the Supreme Court of Ohio's decision in *Cincinnati v. Ilg*, ___Ohio St.3d___ , 2014-Ohio-4258.