[Cite as *State v. Baah*, 2016-Ohio-7131.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 15AP-1131 |
| v. | : | (M.C. No. 2015 TRC 155422) |
| Peter N. Baah, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on September 30, 2016

*Richard C. Pfeiffer*, *Jr.*, City Attorney, and *Orly Ahroni*, for appellant.

*Peter J. Binning*, for appellee.

APPEAL from the Franklin County Municipal Court

SADLER, J.

{¶ 1} Plaintiff-appellant, State of Ohio, appeals from a sentencing entry of the Franklin County Municipal Court, which sustained the motion to suppress filed by defendant-appellee, Peter N. Baah, and dismissed the charge of operating a vehicle under the influence of alcohol ("OVI") due to a lack of probable cause for appellee's arrest. For the following reasons, we reverse the decision of the trial court.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On July 25, 2015 at 2:25 a.m., appellee was charged with OVI-impaired, pursuant to R.C. 4511.19(A)(1)(a), a driving in marked lanes violation, pursuant to R.C. 4511.33, and a space between moving vehicles violation pursuant to R.C. 4511.34. Appellant entered a plea of not guilty to the charges.

{¶ 3}   On November 9, 2015, appellee filed a motion to suppress challenging, in pertinent part, reasonable suspicion for his stop, administration of various field sobriety tests, and probable cause for his arrest.  The trial court held a hearing on the motion on November 18, 2015.  The parties stipulated to identification, venue, the officer's competency, and the content of the BMV 2255 form.  Sergeant Christian Niemeyer, a patrol officer with the Franklin County Sheriff's Office, then testified on behalf of appellee.

{¶ 4}   According to Niemeyer, on July 25, 2015 at approximately 2:23 a.m., he had just entered Interstate 71 from 17th Avenue in Columbus when he observed appellee pass him, change lanes abruptly, and slam on his brakes to keep from rear-ending another car.  In Niemeyer's opinion, he observed appellant commit a "following too close" and a "marked lanes" violation.  (Tr. at 11.)

{¶ 5}   Niemeyer stopped appellee's vehicle and made contact with appellee and his passenger.  Niemeyer testified that an odor of alcohol on appellee's breath was "very noticeable" and that appellee's eyes were bloodshot and glassy.  (Tr. at 25.)  Niemeyer asked appellee to exit the vehicle to perform field sobriety tests.

{¶ 6}   Once out of the vehicle, a "strong" odor of alcohol emanated from appellant.  (Tr. at 15, 65.)  Appellee, who was respectful in manner, told Niemeyer that he had come from a bar and had "a little" to drink that night, "[p]erhaps Hennessy."  (Tr. at 13.)  Niemeyer testified that he administered the HGN, walk-and-turn and one-leg-stand standardized field sobriety tests, and the alphabet test.

{¶ 7}   Prior to conducting the HGN test, Niemeyer turned off his front visibar lights, positioned appellant away from traffic facing the wall of the highway, and checked appellee for resting nystagmus, equal pupil size, and equal tracking.  Niemeyer observed appellee exhibit six out of six clues on the HGN test.  Administration of the HGN test cannot be seen from the cruiser video.

{¶ 8}   Next, Niemeyer administered the walk-and-turn test.  Niemeyer asked appellee if he had medical problems, and appellee indicated that he had a shrapnel injury to his thigh but believed he would be able to walk sufficiently for the test.  After positioning appellee in a starting position on dry, smooth asphalt, Niemeyer gave appellee instructions.  In Niemeyer's words:

> Given the fact that there aren't any lines safely off the roadway * * * I have him place his left foot on the ground, place his right foot directly in front of it, touching heal to toe. I tell them, Don't start until I tell them to start, keeping his arms at his sides. At that point I explain this test and demonstrate it for him. During the test, I explain, You're going to take nine heal-to-toe steps and – in a general straight line. You're going to count out loud each step as you go. You're going to look down at your feet and keep your arms down at your side. On the ninth step, you're going to turn on your lead foot, keeping that foot planted on the ground. With your other foot, you're going to make a series of small steps, turning your body around; and then you're going to take nine heel-to-toe steps back. And once you start the test, don't stop until you finish. * * *
>
> As I explain it, I demonstrate it to them as well; and then after that, I ask him if he understands it; and then I explain it one more time just to verify that he knows everything.

(Tr. at 21-22.) The line used was imaginary. He observed appellee exhibit two out of eight possible clues on the walk-and-turn test: not touching heel to toe and twice stepping off line. Niemeyer testified that two clues on the walk-and-turn test indicate that a person would test over .10 blood alcohol content.

{¶ 9} Following the walk-and-turn test, Niemeyer administered the one-leg-stand test. Niemeyer did not observe appellant exhibit any clues. Lastly, Niemeyer performed the alphabet test, a non-standardized field test. Niemeyer asked appellee to recite the alphabet starting with the letter E and ending with the letter T. Appellee was unable to recite the correct letters.

{¶ 10} Niemeyer decided to arrest appellee for OVI. According to Niemeyer, his decision was based on erratic driving, the admission of drinking, the odor of alcohol, appellee's performance on the standardized tests, and appellee's performance on the non-standardized test.

{¶ 11} On cross-examination, Niemeyer testified that appellee pulled his car over normally and did not have any problems following directions, retrieving documents, or exiting his vehicle. Niemeyer agreed that appellee exhibited 2 out of 23 clues during the personal contact phase of his initial encounter: the odor of alcohol and bloodshot and

glassy eyes. Niemeyer also agreed that appellee could naturally have eyes that look bloodshot and agreed that he did not express that the odor of alcohol was "strong" in the report that he wrote the day following the incident. (Tr. at 40.) Regarding the walk-and-turn test, Niemeyer specified that he did not think he faulted appellee for deviating from an imaginary line but, rather, faulted him for stepping completely off to the side. To Niemeyer, "a line is walking directly heel to toe in a general, straight direction. [W]hen he steps * * * his foot to the side, to me that would be stepping off line." (Tr. at 56.) Niemeyer agreed that the alphabet test is not standardized and testified that it was not a very important part of his arrest decision.

{¶ 12} On redirect, Niemeyer testified that he filled out a BMV 2255 form in connection with the stop. On the BMV 2255 form, Niemeyer indicated that his "reasonable grounds for OVI * * * arrest before test were: almost ACDA car in front, strong odor alcoholic bev, 6 HGN." (BMV 2255 Form at 1.) Niemeyer explained that almost ACDA meant almost running into a vehicle.

{¶ 13} Appellant submitted without objection the police cruiser video and the 2013 NHTSA manual as exhibits to the trial court, then rested.

{¶ 14} Appellee testified in his own defense. An armed services veteran, appellee sustained injuries while deployed to Iraq that included a gunshot wound to his right hand trigger finger and sustaining shrapnel impact to his fingers and left thigh. As a result of these incidences, appellee was diagnosed with and still receives treatment for post-traumatic stress disorder ("PTSD"). According to appellee, his PTSD and medications for PTSD can affect his mood and anxiety, coordination, and memory. Being pulled over by the police was a stressful situation for him. Appellee testified that on the night in question, he had been drinking and consumed two shots of Hennessy about one hour prior to driving. On cross-examination, appellee disagreed that he should not drink alcohol while taking his PTSD related medication and testified that he did not take his sleeping pill prior to drinking on the evening in question. Regarding his driving, appellee explained that he was reacting to the car in front of him moving very slowly and had to change lanes to get around that car.

{¶ 15} On November 25, 2015, the trial court sustained appellee's motion to suppress. In doing so, the trial court found that appellee's erratic driving supported the

officer's reasonable suspicion to stop appellee, and the officer's decision to have appellee exit the car to perform field sobriety tests was supported by the erratic driving, the strong smell of alcohol on appellee, and appellee's admission to drinking alcohol. The trial court found a lack of substantial compliance in administering the walk-and-turn test due to Niemeyer's instruction to walk on a "general straight line," rather than an "imaginary straight line," but indicated the officer would be permitted to testify about his observations of appellee's performance on all three standardized field sobriety tests. (Nov. 25, 2015 Mot. Hearing Entry at 5-6.) Regarding the alphabet test, the trial court found the test to be an "unlawful intrusion on [appellee's] liberty," as it was a non-standardized test performed after appellee passed the one-leg-stand test. As such, the trial court determined the alphabet test should be suppressed and not shown to the jury. The trial court concluded that the officer did not have probable cause to arrest appellee for OVI. Specifically, the court found that:

> 1) [Appellee's] detention was improperly extended for the purpose of administering a non-standardized field sobriety test; the results of which factored strongly in the officer's decision to arrest and; 2) the facts that suggested that [appellee] was not driving while intoxicated were ignored.
>
> * * *
>
> At the moment of arrest, Sgt. Niemeyer had smelled an odor of alcohol on [appellee's] person and [appellee] had exhibited six clues on the HGN test. However, after those two indicia of intoxication were noted, virtually all other criteria used to determine intoxication were not exhibited by [appellee]. [Appellee] only showed two clues out of a possible 22 during the personal contact phase of his initial encounter with Sgt. Niemeyer. The deliberate and slow performance of [appellee] on the FST test can be explained, now that Sgt. Niemeyer knows that [appellee] is suffering from PTSD. The court has already found that the decision to arrest should have occurred without consideration of the alphabet test. For the "totality of circumstances test" to be properly applied, facts that suggest the suspect was not intoxicated may not be disregarded.

(Mot. Hearing Entry at 7, 8-9.)

{¶ 16} Thus, the trial court found that at the time of the arrest, insufficient information existed to link appellee's erratic driving to his consumption of alcohol. As a result, the trial court dismissed the OVI charge and set the remaining traffic charges for trial. On December 16, 2015, appellant filed a timely appeal to this court.[1]

## II. ASSIGNMENTS OF ERROR

{¶ 17} Appellant assigns the following as error:

> 1. The trial court erred in finding that there was no probable cause to arrest Defendant for OVI where Defendant drove erratically, had a strong odor of an alcoholic beverage on his person, had bloodshot and glassy eyes, admitted to consuming alcohol, admitted to coming from a bar, failed two standardized field sobriety tests, and performed poorly on the alphabet test.
>
> 2. The trial court erred as a matter of law by dismissing the OVI charge against Defendant after finding no probable cause to arrest.

## III. STANDARD OF REVIEW

{¶ 18} "[A]ppellate review of a motion to suppress presents a mixed question of law and fact." *State v. Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-1574, ¶ 7, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

> When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara* (1997), 124 Ohio App.3d 706, 707 N.E.2d 539.

*Burnside* at ¶ 8.

---

[1] Because this is an appeal of a dismissed rather than pending charge, appellate jurisdiction exists because appellant perfected its appeal by filing a notice of appeal within 30 days of judgment. R.C. 2945.67(A); App.R. 3 and 4(A)(1). *In re S.J.*, 106 Ohio St.3d 11, 2005-Ohio-3215, ¶ 13.

## IV. DISCUSSION

### A. First Assignment of Error

{¶ 19} Under its first assignment of error, appellant generally contends that the trial court erred in determining that Niemeyer lacked probable cause to arrest appellee and challenges several of the trial court's findings and determinations leading to that conclusion. For the following reasons, we agree that Niemeyer had probable cause to arrest appellee.

{¶ 20} As a preliminary issue, we note that under this assignment of error, appellant challenges the trial court's suppression of the walk-and-turn test results and Niemeyer's observations on the alphabet test. However, as the assignment of error addresses the ultimate conclusion that the trial court erred in not finding probable cause rather than in suppressing evidence, we will consider the ultimate probable cause determination only. *Huntington Natl. Bank v. Burda*, 10th Dist. No. 08AP-658, 2009-Ohio-1752, ¶ 21, quoting App.R. 12(A)(1)(b) (stating that "a court of appeals shall * * * [d]etermine the appeal on its merits on the assignments of error set forth in the briefs"); *Williams v. Barrick*, 10th Dist. No. 08AP-133, 2008-Ohio-4592, ¶ 28.

{¶ 21} For a warrantless arrest to be constitutionally valid, an arresting officer must have probable cause to make the arrest at that time. *State v. Timson*, 38 Ohio St.2d 122, 127 (1974). "To determine whether a police officer had probable cause to arrest an individual for operating a vehicle while under the influence of alcohol, a court looks at whether, at the moment of the arrest, the officer had sufficient information, from a reasonably trustworthy source, of facts and circumstances which were sufficient to lead a prudent person to believe the individual was operating a vehicle under the influence." *Columbus v. Shepherd*, 10th Dist. No. 10AP-483, 2011-Ohio-3302, ¶ 29, *discretionary appeal not allowed*, 130 Ohio St.3d 1439, 2011-Ohio-5883. *State v. Homan*, 89 Ohio St.3d 421, 427 (2000), *superseded by statute on other grounds*, *State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251. Whether or not there was probable cause is a legal issue that we review de novo. *Columbus v. Horton*, 10th Dist. No. 13AP-966, 2014-Ohio-4584, ¶ 14, *discretionary appeal not allowed*, 142 Ohio St.3d 1465, 2015-Ohio-1896.

{¶ 22} "In determining whether probable cause to arrest existed, a reviewing court should examine the 'totality of the circumstances.' " *Columbus v. Weber*, 10th Dist. No.

06AP-845, 2007-Ohio-5446, ¶ 9, quoting *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983). Examples of circumstances that may support or undermine probable cause in an OVI case include the manner of driving, the day and time, the driver's appearance and ability to communicate, including glassy and bloodshot eyes and slurred speech, the driver's behavior and cooperation, the driver's coordination and balance, the smell of alcohol, the presence of alcohol containers in the vehicle, the admission of drinking alcohol or other incriminating statements, and the driver's performance on field sobriety tests. *State v. Caldwell*, 10th Dist. No. 02AP-576, 2003-Ohio-271, ¶ 27; *Shepherd* at ¶ 30-34; *State v. Tonne*, 1st Dist. No. C-980710 (Sept. 24, 1999), syllabus.

{¶ 23} Where a driver commits traffic infractions late at night, has bloodshot and glassy eyes, exudes a strong odor of alcohol, and fails the HGN field sobriety test, this court has found probable cause to arrest the driver for OVI-impaired. *State v. Perkins*, 10th Dist. No. 07AP-924, 2008-Ohio-5060, ¶ 2, 31-32, *discretionary appeal not allowed*, 121 Ohio St.3d 1409, 2009-Ohio-805 (traffic infractions at 1:30 a.m., strong odor of alcohol, glassy and bloodshot eyes, and four clues on HGN test supports probable cause to arrest even where driver was alert and cooperative, did not slur speech, and did not admit to drinking); *State v. Miller*, 10th Dist. No. 13AP-1022, 2014-Ohio-3605, ¶ 26 (failure of HGN test, odor of alcohol, bloodshot and glassy eyes, admission to drinking, off-balance behavior, and involvement in 2:40 a.m. car accident probable cause to arrest a driver without evidence of slurred speech, erratic driving, or uncooperative behavior). *See also State v. Penix*, 11th Dist. No. 2007-P-0086, 2008-Ohio-4050, ¶ 30 (speeding at 1:51 a.m., odor of alcohol, admission to consuming alcohol, and failed HGN test supported a finding of probable cause to arrest appellant for OVI); *Horton* at ¶ 14 (six out of six clues on the HGN test, moderate odor of alcohol, admission of drinking, swaying, and glassy and bloodshot eyes sufficient to support probable cause where driver passed walk-and-turn and one-leg-stand tests).

{¶ 24} Appellant first argues that Niemeyer had probable cause to arrest appellee based on the trial court's factual findings. For its probable cause to arrest analysis, the trial court considered the following findings of fact: the odor of alcohol on appellee, the six clues on the HGN, the two clues appellee showed during the personal contact phase of his initial encounter with Niemeyer (which at the hearing Niemeyer identified as appellee's

bloodshot and glassy eyes and the odor of alcohol), that appellee's slow and deliberate performance on the walk-and-turn test can be explained "now that [] Niemeyer knows that [appellee] is suffering from PTSD," the improper extension of appellee's detention for the purposes of administering the alphabet test, and Niemeyer's failure to consider evidence that appellee was not intoxicated.  (Mot. Hearing Entry at 9.)

{¶ 25} However, the trial court failed to consider several of its own factual findings in its probable cause to arrest analysis.  Namely, the indicia of impairment used by the trial court to find Niemeyer was legally authorized to have appellee exit the car and conduct field sobriety tests included appellee's erratic driving, his admission to consuming alcohol, and the "strong odor of an alcoholic beverage on [appellee] when he was out of the car and separated from his passenger."  (Mot. Hearing Entry at 2.)  In addition, the trial court found appellee exhibited no clues on the one-leg-stand test. While the trial court noted it could not observe a second clue on the walk-and-turn-test, it does not make a finding of fact about the results of that test due to its view that Niemeyer's instructions did not substantially comply with NHTSA requirements.  Our review of the record and the video show that the findings of fact made by the trial court in regard to appellee's erratic driving, strong odor of alcohol, bloodshot and glassy eyes, admission to drinking alcohol, six out of six clues on the HGN test, and no clues on the one-leg-stand test are supported by competent, credible evidence.

{¶ 26} These circumstances are similar to *Perkins*, *Miller*, *Penix*, and *Horton*, which all found probable cause to arrest.  Considering all the above, even if appellee passed both the walk-and-turn test and one-leg-stand test and the alphabet test is not considered (the issue having been waived on appeal based on the assignments of error), at the moment of arrest, Niemeyer nonetheless had sufficient information to cause a prudent person to believe appellee was operating a vehicle under the influence. *Shepherd*.  Therefore, Niemeyer had probable cause to arrest appellee for OVI-impaired.

{¶ 27} Accordingly, appellant's first assignment of error is sustained.

## B.  Second Assignment of Error

{¶ 28} Under its second assignment of error, appellant contends that the trial court erred by dismissing the OVI charge against appellee after finding no probable cause to arrest.  Because we have determined that probable cause to arrest exists and, as a result,

sustained appellant's first assignment of error, appellant's second assignment of error is rendered moot.

## V. CONCLUSION

{¶ 29} Having sustained appellant's first assignment of error and rendering appellant's second assignment of error moot, we reverse the judgment of the Franklin County Municipal Court and remand the matter to that court for further proceedings consistent with this opinion.

*Judgment reversed*;
*cause remanded.*

DORRIAN, P.J., and BRUNNER, J., concur.

_____